K. Douglas SCRIBNER and Laurie B. Scribner, Plaintiffs–Appellants,

v.

John M. SUMMERS, Stephen A. Summers, and Jasco–Sun Steel Treating, Inc., Defendants–Appellees.

No. 131, Docket 96–9645.

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1997.

Decided March 9, 1998.

Alan J. Knauf, Rochester, NY (Knauf & Craig, LLP, of Counsel), for Plaintiffs–Appellants.

Michael W. Malarney, Rochester, NY, for Defendants–Appellees.

Before: FEINBERG and WALKER, Circuit Judges, and REAL,* District Judge.

* Hon. Manuel L. Real, United States District Judge for the Central District of California, sitting by designation.

PER CURIAM:

Plaintiffs K. Douglas and Laurie B. Scribner (the "Scribners") appeal from a November 1996 judgment of the United States District Court for the Western District of New York, David G. Larimer, Ch. J., awarding them $12,000 for "several years of inconvenience and aggravation," but no other damages, for barium contamination of their property caused by defendants John M. Summers, Stephen A. Summers and Jasco–Sun Steel Treating, Inc. (collectively, "Jasco").

The Scribners sought to recover from Jasco under the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. § 9601 et seq. ("CERCLA"), and on several common law grounds, including nuisance and trespass. Among the harms alleged by the Scribners was their inability to sell or rent the property; there had been two commercial tenants and the Scribners had been negotiating with a potential buyer until shortly before the contamination was discovered.

In July 1995, Judge (now Chief Judge) Larimer found for the Scribners on their CERCLA claim and awarded all of their "response costs" under that act, but dismissed the common law claims. On appeal, this court reversed the dismissal of the trespass and nuisance claims, holding that Jasco was liable under both theories. We remanded for determination of damages and advised the district court that the Scribners were entitled to only one recovery. *Scribner v. Summers*, 84 F.3d 554 (2d Cir.1996).

On remand, Chief Judge Larimer did not conduct further evidentiary proceedings. In November 1996, he held that elimination of the contamination, which Jasco was allegedly already obligated to pay for under CERCLA and pursuant to a consent decree between Jasco and the New York State Department of Environmental Conservation (DEC), would fully restore the property. The judge therefore refused to award any damages for permanent injury to the property. As already indicated, he did award the Scribners $12,000 for the inconvenience and aggravation of having their property contaminated. However, the judge did not award any other damages. Because we think the record before us is insufficient for a proper determination of the issue of damages for permanent injury we vacate that part of the judgment of the district court and remand for further proceedings.

■ Under New York law, "the proper measure of damages for permanent injury to real property is the lesser of the decline in market value and the cost of restoration." *Jenkins v. Etlinger*, 55 N.Y.2d 35, 447 N.Y.S.2d 696, 698, 432 N.E.2d 589, 591 (1982). The plaintiff, however, need only prove one of the two measures and it becomes the defendant's burden to prove "that a lesser amount ... will sufficiently compensate for the loss." *Id.* A plaintiff may also recover temporary damages, measured by the "reduction of the rental or usable value of the property" during the pendency of the injury. *Guzzardi v. Perry's Boats, Inc.*, 92 A.D.2d 250, 460 N.Y.S.2d 78, 82 (App.Div. 1983); *Jenkins*, 447 N.Y.S.2d at 698, 432 N.E.2d at 591.

As indicated, the district court held that the cleanup to which the Scribners were already entitled would sufficiently remedy any permanent injury to their property. It is not clear to us from the record exactly what Jasco's obligations are with respect to cleaning up the Scribners' property and it is accordingly difficult for us to review the judge's ruling on this point. As for temporary injury to their property, the district court stated that it was not convinced that the Scribners' tenants moved off the property as a result of the contamination or that the failure to attract new tenants was attributable to the contamination. It therefore refused to award damages for such inability to rent the property. The Scribners argue that these rulings were error.

The Scribners argue that they proved decline in market value but Jasco failed to prove cost of restoration and that, under *Jenkins*, they are therefore entitled to damages for permanent injury equal to the decline in market value. To show such decline, the Scribners point to (1) evidence of offers to buy the property for up to $335,000 before the possibility of contamination became

known; (2) the pre-contamination appraisal of a plaintiff's expert that the property was worth $360,000; (3) the pre-contamination appraisal of a defendant's expert that the property was worth $330,000; and (4) a plaintiff's expert's testimony that the most even a speculator would pay for the contaminated property was $50,000. They argue that Jasco's evidence as to the cost of cleanup is inadequate. Jasco's expert testified that cleanup would .cost $37,700, but the Scribners contend that this figure omits both the cost to clean a heavily polluted strip of land at the boundary of the Scribners' property and the cost to remedy ground water contamination. The record tends to confirm that Jasco's $37,700 figure is incomplete but, as discussed below, lacks some factual findings that would have been useful in deciding this question.

The Scribners also argue that, even if Jasco proves the cost of cleanup, simply eliminating the physical contamination will not sufficiently compensate them because it will not remove the "stigma" that attaches to contaminated property in the public perception, depressing the property's value. The Scribners rely on *Commerce Holding Corp. v. Board of Assessors of the Town of Babylon*, 88 N.Y.2d 724, 649 N.Y.S.2d 932, 673 N.E.2d 127 (1996), and *Criscuola v. Power Authority of the State of New York*, 81 N.Y.2d 649, 602 N.Y.S.2d 588, 621 N.E.2d 1195 (1993), in which the New York Court of Appeals acknowledged the existence of stigma from environmental contamination. Neither case is directly controlling, however. *Commerce Holding*, a tax certiorari case, listed "the stigma remaining after cleanup" among the factors to be considered when valuing contaminated property for the purpose of tax assessment. 649 N.Y.S.2d at 936, 673 N.E.2d at 131. However, the court held that cleanup costs alone were "an acceptable, if imperfect, surrogate to quantify environmental damage...." *Id. Criscuola* held that a land owner in a condemnation proceeding may recover the decrease in value due to the public's fear of something on the land (in that case, electromagnetic emissions from power lines) even if the fear is unreasonable. 602 N.Y.S.2d at 588, 621 N.E.2d at 1195. How-

ever, the case did not involve fear persisting after the cause was removed.

The Scribners also draw our attention to *Nashua Corp. v. Norton Co.*, 1997 WL 204904 (N.D.N.Y.1997), in which the Northern District, faced with facts similar to our own, held that a plaintiff may prove stigma in addition to cleanup costs because removal of contamination alone may not restore the property to its former condition. *Id* at *6. The district court in *Nashua* relied on *Johnson v. Scholz*, 276 A.D. 163, 93 N.Y.S.2d 334, 336 (App.Div.1949) ("Where the repairs do not restore the property to the condition before the accident, the difference in market value immediately before the accident and after the repairs have been made may be added to the cost of repairs"). Cf. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3rd Cir.1994) (Under Pennsylvania law, stigma remaining after repair compensable if there is some ongoing risk). At oral argument, Jasco appeared to concede that stigma is part of restoration and argued instead that the Scribners had not introduced evidence of stigma in this case.

Although the Scribners urge us to calculate their damages ourselves, we believe that the record is insufficient to permit a proper determination of damages or of the stigma question. Because the district judge held that the Scribners were already entitled to a cleanup and that cleanup constitutes a full recovery, the judge did not address stigma. He also did not rule on other issues related to calculating permanent damages.

Due to the uncertainty of New York law on whether stigma damage can be recovered following an environmental cleanup, we would be inclined to certify the question to the New York Court of Appeals should the question be presented on an appropriate record. For the time being, however, we think the proper course is to remand to the district court for supplementation of the record on matters relating to value and damage. For example, on the question of property value the judge stated that he was "not convince[d]" by the Scribners' evidence of decreased value, but he did not specifically reject the testimony of plaintiffs' expert, nor did he cite contrary evidence or perform alternate calculations. If the Scribners may indeed recover for stigma remaining after

cleanup, then there should be evidence as to the property's value once the cleanup is complete and how much of any decline is attributable to stigma.

The record also does not reflect the progress and cost of cleanup efforts that may have taken place since trial and which bear on the calculation of repair costs and damages. Of particular interest to us, and presumably to the district court on remand, would be evidence of: what has already been done, and at what cost; what is presently being done, and at what cost; what remains to be done, and at what cost; when each stage of the work is anticipated to be completed; and the feasibility of (and progress toward) obtaining a release of liability from the appropriate environmental agency which might, it was argued on this appeal, "repair" the stigma. The record also does not contain evidence of a second consent decree between Jasco and the DEC, which was alluded to at oral argument. Such a decree might clarify the extent of Jasco's obligations, especially the question whether Jasco must pay for the cleanup directly or need only reimburse the Scribners—a substantial distinction for individual plaintiffs like the Scribners who might not be able to afford to spend the necessary amounts and await reimbursement. We anticipate that an opportunity for both sides to produce additional evidence will clarify the issues and enable the district judge to properly calculate the damages to which the Scribners are entitled.

We therefore vacate so much of the district court's judgment as relates to damages for permanent injury to real property. As for damages for temporary injury, the Scribners had an opportunity to prove decline in rental or usable value, *Guzzardi*, 460 N.Y.S.2d at 82, and could not do so to the district court's satisfaction. As already indicated, the Scribners were awarded $12,000 in quality of life damages. We see no reason to disturb these rulings.

Judgment affirmed in part, vacated in part and case remanded for proceedings in accordance with this opinion.