Terry **MEHLENBACHER**,
et al., Plaintiff,

v.

**AKZO NOBEL SALT, INC.,** Defendant.

**Integrated Waste Services,
Inc.,** Plaintiff,

v.

Akzo Nobel Salt, Inc., Defendant.

Nos. 94–CV–6343L, 95–CV–6247L.

United States District Court,
W.D. New York.

Sept. 28, 1999.

Richard J. Lippes, Allen, Lippes & Shonn, Buffalo, NY, Frank H. Ferris, III, Weiner, Lawrence & Ferris, East Rochester, NY, for Plaintiffs.

Kenneth A. Payment, Rochester, NY, Michael A. Cerussi, Jr., Ronald GF. Crispi, Mark C. Dillon, Cerussi & Spring, White Plains, NY, for Defendants.

*DECISION AND ORDER*

LARIMER, Chief Judge.

These two cases both arise out of the March 1994 collapse of a salt mine being operated by defendant Akzo Nobel Salt, Inc. ("Akzo"). Several motions are pending in both cases, but since in many respects they involve similar if not identical issues of law, solely for purposes of these motions and this Decision and Order I am consolidating these cases pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, which permits consolidation "of any or all the matters in issue" in "actions involving a common question of law or fact...."

## PROCEDURAL BACKGROUND

Although the plaintiffs in both cases are owners of surface property above or near the mine, the two cases have very different procedural histories. In *Integrated Waste Services, Inc. v. Akzo Nobel Salt, Inc.,* 95–CV–6247L (hereinafter "Integrated Waste" or "IWS"), the two plaintiffs, Integrated Waste Services, Inc. ("IWS"), and Bear Development Company, Inc. ("Bear"), sued Akzo for damage caused to the mine cavities (in which IWS and Bear held a reversionary interest) by water that filled the cavities in the aftermath of the collapse, as well as for surface damage. On April 16, 1996, I granted summary judgment in favor of Akzo on all of plaintiffs' claims. *Integrated Waste Services, Inc. v. Akzo Nobel Salt, Inc.,* 921 F.Supp. 1037 (W.D.N.Y.1996).

Plaintiffs appealed, and the Court of Appeals for the Second Circuit affirmed as to plaintiffs' claims for damage to the mine cavities, but, stating that plaintiffs' evidence of surface damage, though "meager," was "enough to permit them to introduce more specific evidence at trial," reversed and remanded as to that issue alone. *Integrated Waste Services, Inc. v. Akzo Nobel Salt, Inc.,* 113 F.3d 296, 303 (2d Cir.1997).

Akzo has now moved for summary judgment on this sole remaining claim on the grounds that plaintiffs have presented no evidence of surface damage, and that as a matter of law plaintiffs cannot recover for loss of market value due to public fear of future surface damage, *i.e.,* so-called "stigma" damage. Plaintiffs have moved for summary judgment on the issue of liability, asserting that the only issue left upon remand from the Second Circuit is to establish the amount of plaintiffs' damages. Akzo denies that it has conceded liability for anything other than actual physical damage to surface properties, and maintains that plaintiffs have presented no evidence of such damage.

Plaintiffs in the other case, *Mehlenbacher v. Akzo Nobel Salt, Inc.,* 94–CV–6343L (hereinafter "Mehlenbacher"), consist of both individuals and businesses who reside or do business in the vicinity of the collapsed portion of the mine. They seek to represent a class comprising all individuals, businesses, and professional entities residing within thirteen miles of the site of the collapse. Plaintiffs have moved to certify the proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure. Akzo has moved for partial summary judgment dismissing all claims for stigma damage and for emotional distress that is not related to actual physical illness or injury, including emotional distress related only to property damage.

Although Akzo has not conceded that any of the named plaintiffs have sustained physical damage to their surface property, it does contend that at the very least, the vast majority of the plaintiffs in both cases own property that is located in areas where the mine collapse and flooding caused no surface damage at all. According to Akzo, the area over that part of the mine that collapsed completely, *i.e.,* where the underground salt pillars supporting the mine cavity roof completely dissolved (which Akzo refers to as "Area # 1"), covers only about fifty acres, which comprises less than one percent of the roughly 6550

acres over the entire mine. Akzo states that "Area # 2," which was subject to moderate subsidence, covers about 1000 acres (about fifteen percent of the mine surface area), and "Area # 3," which covers the remaining 5500 acres, was subject to no physical surface damage at all. According to Akzo, plaintiffs' lands are primarily located in Area # 3, and could not have sustained any surface damage. Akzo also states that in Area # 2, even though there was some subsidence in the immediate aftermath of the mine collapse, subsidence there now is actually occurring more *slowly* than before the collapse, because the mine there is completely filled with saturated saltwater, so that the pillars are no longer dissolving, and the water itself acts as a support for the surface.

## DISCUSSION

### I. Claims for "Stigma" Damage

■ Whether plaintiffs can recover damages for diminution in property value attributable to the stigma that has allegedly attached itself to their property in the minds of the public affects both cases in a number of ways. In *Integrated Waste,* this is a very significant issue because such damages comprise a major portion of the damages claimed by plaintiffs. This issue is important in *Mehlenbacher* for that reason as well, and also because it will have a bearing on the nature of the class or subclasses that might be appropriate for certification.

Plaintiffs in *Integrated Waste* contend that they clearly can recover stigma damages because of Akzo's alleged concession of liability in that case. According to plaintiffs, the only issue left to be tried upon remand from the Court of Appeals is one of damages, of which diminution in property value is a part. In support of this assertion, plaintiffs note the Second Circuit's statement that "Akzo, in an affidavit provided to this court, essentially concedes liability for substantiated surface damages resulting from the inundation of the salt mine," 113 F.3d at 302. Plaintiffs

take the position that the "surface damages" referred to by the Second Circuit necessarily include stigma damages, because "[t]he diminution in the market value of IWS's property is obviously damage to the surface." Plaintiffs' Memorandum of Law at 3.

I find that proposition far from obvious, however, nor do I believe that the Court of Appeals made any ruling in that regard at all. For one thing, I interpret Akzo's statements concerning its concession of liability to mean only that it concedes liability for *physical* surface damage. Secondly, as a matter of law it is not at all certain that loss of market value constitutes legally cognizable "damage" giving rise to liability. Before one can recover damages for *any* thing, there must be an independent basis for liability to begin with. To say that a subsurface owner is strictly liable for damage to the surface, and therefore must pay for any diminution in value, begs the question. The real issue, then, is whether diminution in value does in fact constitute surface "damage."

The parties agree that New York law is controlling in this diversity action. As the Second Circuit has recognized, however, New York law is uncertain about whether stigma damages are recoverable in a tort action involving real property. *Scribner v. Summers,* 138 F.3d 471, 473 (2d Cir.1998) (per curiam). Most of the cases discussing such damages involve condemnation or tax proceedings, where the only real issue is the actual market value of the property. In the case at bar, the threshold issue is whether, even assuming that there has been a decrease in the property's value due to the mine collapse, plaintiffs are entitled to recover damages for that decrease.

Plaintiffs rely on several cases to support their view of proper damages. In *Criscuola v. Power Auth. of the State of New York,* 81 N.Y.2d 649, 602 N.Y.S.2d 588, 621 N.E.2d 1195 (1993), an eminent domain case involving a high-voltage pow-

er line easement over the claimants' property, the New York Court of Appeals held that the claimants could recover for diminution of market value attributable to alleged public fear of high-voltage lines, regardless of whether the fear was reasonable. As the court noted, though, "[t]he issue in a just compensation proceeding is whether or not the market value has been adversely affected." *Id.* at 652, 602 N.Y.S.2d 588, 621 N.E.2d 1195 (citation omitted). In other words, if the market value has been adversely affected by the respondent's actions, the claimant is entitled to recover; nothing else need be shown.

That is not necessarily true in a tort action against a private defendant. For example, if person A owns a house that enjoys a scenic view of a valley, and person B then builds a house blocking that view, potential buyers might not be willing to pay as much for A's house as they would have before B's house existed, but that does not mean that B is liable to A for the diminution in market value of A's house, absent some tortious act on B's part.

*Commerce Holding Corp. v. Board of Assessors of the Town of Babylon,* 88 N.Y.2d 724, 649 N.Y.S.2d 932, 673 N.E.2d 127 (1996), also cited by plaintiffs, is likewise not controlling here. *Commerce Holding* was a tax certiorari proceeding in which the petitioner sought a reduction of the assessed value of its property by a town board of assessors. The main issue was whether environmental contamination should be considered in valuing the property for tax purposes. The Court of Appeals held that it should, and stated that "the stigma remaining after cleanup" was one factor that could be considered. *Id.* at 732, 649 N.Y.S.2d 932, 673 N.E.2d 127. As the court noted, however, "[t]he cardinal principle of property valuation for tax purposes ... is that property '[a]ssessments shall in no case exceed full value.' " *Id.* at 729, 649 N.Y.S.2d 932, 673 N.E.2d 127 (quoting N.Y. Const., art. XVI, § 2). Since " 'full value' is typically equated with market value," the court said, "the assessment of property value for tax purposes must take into account *any* factor affecting a property's marketability." *Id.* (citation omitted; emphasis added).

Again, those principles are different from the ones applicable in a tort case. The court or factfinder cannot simply proceed to the question of market value, but must first consider whether there is a basis for liability.

Plaintiffs in *Mehlenbacher* cite the Fourth Department's decision in *Scheg v. Agway, Inc.,* 229 A.D.2d 963, 645 N.Y.S.2d 687 (4th Dep't 1996), in which the court held that plaintiffs had stated a cause of action for continuing nuisance based on their allegation that the value of their property had diminished as a result of its proximity to the defendant's landfill, which had been found by the New York State Department of Environmental Conservation ("DEC") to pose a significant threat to the environment because of hazardous waste on the site. The plaintiffs did not claim any damages resulting from actual exposure of their property or themselves to the toxic chemicals.

Although *Scheg* lends some weight to plaintiffs' position, I do not believe that it resolves the precise issue presented in the case at bar. The actual issue in *Scheg* was whether the plaintiffs' claims were timely, and the consequences of the court's finding that the plaintiffs had stated a cause of action was that a three-year statute of limitations for property damage claims applied, that the plaintiffs could claim the benefit of the "continuing wrong" exception to their nuisance claims (which had arisen more than three years before they filed suit), and that the damages that the plaintiffs could seek were limited to those incurred within the three-year period prior to commencement of the suit.

■ Although strictly speaking, the court's statement that the plaintiffs in *Scheg* had stated a cause of action was not dictum, I do not view it as expressing any

broad principle of New York law that supports plaintiffs' claims for stigma damages in the instant cases. While it is true that, in the absence of any clear authority from the New York Court of Appeals, this court must give "due regard" to lower New York courts, *see AXA Marine and Aviation Ins.(UK) Ltd. v. Seajet Indus., Inc.*, 84 F.3d 622, 626 (2d Cir.1996), the applicability of *Scheg* to this case is diminished by the fact that the availability of stigma damages was not directly at issue in *Scheg*, and accordingly the court undertook no analysis of that issue, nor did it cite any authority for its holding that the plaintiffs had stated a cause of action. It is also not clear whether the defendants in *Scheg* even disputed the issue of whether the plaintiffs could seek damages for diminution in value, and given the different factual setting of that case, which involved toxic wastes that had been found by the DEC to pose a "significant threat" to the environment, as well as the different legal issues that were before the Appellate Division, I am not convinced that *Scheg* establishes any rule of New York law with respect to the availability of stigma damages.

A federal district court applied New York law to a situation roughly analogous to that here in *Nashua Corp. v. Norton Co.*, No. 90–CV–1351, 1997 WL 204904 (N.D.N.Y. Apr. 15, 1997). There, the plaintiff had purchased a factory from the defendant. Alleging that the defendant had contaminated the property, the plaintiff sought remediation costs and, under a nuisance theory, damages for diminution in property value remaining after remediation. The defendant sought to limit damages to the lesser of the two. The court said that the principle that damages should be limited to the lesser of diminished value

or cost of remediation only applies when the property can be completely restored to its original condition. The plaintiff had presented proof that this would be impossible. Relying on *Criscuola*, the court held that the plaintiff could show proof of stigma as part of its proof of diminished value.

Certain factual differences between *Nashua Corp.* and the instant case, however, reduce its relevance here. First, the plaintiff in *Nashua Corp.* alleged actual physical injury—chemical contamination—of its property. That is a significant difference. The plaintiffs in *Integrated Waste*, and at least some of the plaintiffs in *Mehlenbacher*, have not alleged *any* actual physical injury. Granted, plaintiffs' subsurface property has been permanently *altered*, but I have already held in this case that that alteration, *i.e.*, the filling of the mine cavities with water, is not an injury for which plaintiffs are entitled to recover. *Integrated Waste*, 921 F.Supp. at 1042.

In addition, the plaintiff in *Nashua Corp.* presented proof that the site could not be restored to its original, uncontaminated condition. The court's holding was therefore based in part on the principle that where property cannot be fully remediated, the difference in market value immediately before the accident and after the repairs have been made may be included in an award of damages. *Nashua Corp.*, 1997 WL 204904 *6. Here, however, Akzo contends that some of the properties have been fully repaired, and that others sustained no physical damage in the first place, so that they have no need for remediation at all. If that is true, *Nashua Corp.* would not support an award for diminution in property value.[1]

1. I recognize that the court in *Cottonaro v. Southtowns Indus., Inc.*, 213 A.D.2d 993, 625 N.Y.S.2d 773 (4th Dep't), *leave to app. dismissed*, 86 N.Y.2d 886, 635 N.Y.S.2d 951, 659 N.E.2d 774 (1995), in which the plaintiffs sought damages for the diminution in value of their properties resulting from the emission of formaldehyde vapors from insulation previously installed by the defendant, stated that

"[d]amages from the diminished market value of real property as a result of public fear of exposure to a potential health hazard constitute consequential damages." *Id.* at 993, 625 N.Y.S.2d 773. This statement is dictum, though, because the court held that these claims were properly dismissed as untimely. Moreover, the only authority that the court cited for that proposition was *Criscuola*,

Thus, the New York case law on this subject is neither extensive nor particularly apt. The court has, however, found a number of relevant cases from other jurisdictions. Although not controlling, some of them are factually more analogous to the instant case than are the reported cases from New York, and their reasoning does provide some guidance on the general common-law principles in this area. In general, the majority of these cases stand for the proposition that in the absence of actual physical damage to a plaintiff's property, stigma damages alone are too remote and speculative to be recoverable.

In *Adams v. Star Enterprise*, 51 F.3d 417 (4th Cir.1995), for example, a group of homeowners alleged that an underground oil spill caused by the defendant had caused toxic vapors to spread through the area, and that despite defendant's remediation efforts, public fear remained. There was no actual physical invasion of the plaintiffs' land, nor did the plaintiffs allege any noxious odors. Affirming the district court's dismissal of the complaint, the Fourth Circuit stated that the plaintiffs "allege[d] mere fear" of health risks, and that their claim that their property values had declined due to the stigma caused by the oil spill was too speculative to make out a nuisance claim under Virginia law. *Id.* at 422. The court distinguished *Foley v. Harris*, 223 Va. 20, 286 S.E.2d 186 (1982), in which the Virginia Supreme Court upheld a lower court's determination that a property owner had created a private nuisance by keeping old junked cars on his property, because in *Foley* the unsightly cars were visible from neighboring properties. In *Adams*, the court said, the underground oil spill was *undetectable* from the plaintiff's properties.

In *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3d Cir.1994), *cert. denied*, 513 U.S. 1190, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995), thirty-eight people sued several defendants seeking damages resulting from exposure to PCBs. The dis-

trict court granted summary judgment for defendants on the plaintiffs' claim for the diminution in property value of their homes caused by the presence of PCBs on their land. Although the Third Circuit reversed, the court made it clear that under Pennsylvania law stigma damages are not available absent at least some temporary physical damage to the property. The court held that:

> where (1) defendants have caused some (temporary) physical damage to plaintiffs' property; (2) plaintiffs demonstrate that repair of this damage will not restore the value of the property to its prior level; and (3) plaintiff's show that there is some ongoing risk to their land, plaintiffs can make out a claim for diminution of value of their property without showing permanent physical damage to the land.

*Id.* at 798 (footnote omitted). The court also said that concerns that this rule could lead to liability for unfounded fears, such as fears regarding people with AIDS who move into a neighborhood, were overstated, because "[t]he rule we have articulated only allows recovery when there has been some initial *physical damage* to plaintiffs' land." *Id.* at 798 n. 64 (emphasis added).

In *Berry v. Armstrong Rubber Co.*, 989 F.2d 822 (5th Cir.1993), *cert. denied*, 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994), property owners sued a former tire manufacturer, alleging that it had dumped toxic wastes on its property. The district court granted summary judgment for the defendant. The Fifth Circuit affirmed, agreeing with the district court that even accepting the truth of the plaintiffs' expert's testimony that the stigma attached to their property had decreased its value, the "plaintiffs could not recover under Mississippi law for reduced market value caused by a 'stigma' absent some physical damage to plaintiffs' land caused by the defendant." *Id.* at 829.

which as stated is not dispositive of this issue

in a tort context.

In *FDIC v. Jackson–Shaw Partners No. 46, Ltd.*, 850 F.Supp. 839 (N.D.Cal.1994), the FDIC brought a foreclosure action, and also sought damages for the impairment of its security interest concerning contamination of the soil and groundwater on a piece of property owned by defendant. The defendant filed cross-claims for trespass and nuisance against the alleged contaminators. The court dismissed defendant's claim for damages for diminution in value, stating that such damages "cannot be recovered under those theories." *Id.* at 843. The court said that "California courts which have spoken in this area are uniformly of the view that diminution in value damages are not compensable in a continuing trespass or continuing nuisance case." *Id.*

In *Good Fund, Ltd.—1972 v. Church*, 540 F.Supp. 519 (D.Colo.1982), *rev'd on other grounds*, 703 F.2d 464 (10th Cir. 1983), land developers brought an action alleging contamination of the ground near a nuclear arms plant. The district court dismissed the claims, in part on the ground that fear of future harm could not form the basis for liability. The court said that "the kind of fear which may be presented by the evidence in this case is a public reaction which is conjectural, transitory and ephemeral." *Id.* at 534. The court concluded that the "[p]laintiffs have not provided authority for a tort based on creation of fear without physical damage." *Id.* at 535.

In *Santa Fe Partnership v. ARCO Products Co.*, 46 Cal.App.4th 967, 54 Cal. Rptr.2d 214 (1996), landowners sued the former owner of a gasoline station on adjacent property, alleging that petroleum had migrated into the plaintiffs' soil and groundwater. On the parties' stipulation, the lower court entered judgment for the defendant so that the plaintiffs could ask the appellate court for an "extension of the law" to permit them to seek damages for diminution in value on a theory of continuing (but remediable) trespass or nuisance. Affirming the judgment, the court stated

that although some cases from other jurisdictions suggested that stigma damages may be recoverable in cases involving permanent physical injury, "courts have uniformly rejected claims of stigma damages absent evidence the plaintiffs own property suffered physical injury from the contamination." *Id.* at 224.

In *Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 487 N.W.2d 715 (1992), the plaintiff landowners sued a chemical company that operated a plant on adjacent property, asserting claims under various theories based on the defendant's alleged contamination of groundwater. Both sides' experts agreed that the plaintiffs' own properties would never be subject to groundwater pollution, but the plaintiffs sought damages for diminution in value. The trial court granted summary judgment for the defendant. An appellate court reversed, but the Supreme Court of Michigan, in a 5–3 decision, reversed the appellate court. The majority said that "negative publicity resulting in unfounded fear about dangers in the vicinity of the property does not constitute a significant interference with the use and enjoyment of land." *Id.* at 306, 487 N.W.2d 715 (footnote omitted). The court added that "[m]ere diminution of the value of property because of the use to which adjoining or nearby premises is devoted, if unaccompanied with other ill results, is *damnum absque injuria* —a loss without an injury, in the legal sense." *Id.* at 311, 487 N.W.2d 715 (quoting *Gunther v. E.I. Du Pont De Nemours & Co.*, 157 F.Supp. 25, 33 (N.D.W.Va.1957), *app. dismissed*, 255 F.2d 710 (4th Cir.1958)).

The dissenters would have held that a homeowner could maintain a nuisance action for decline in market value caused by a condition tortiously created by the defendant on neighboring property, without having to demonstrate interference with use or enjoyment that might result in further, compensable injuries to persons or property. *Id.* at 322, 487 N.W.2d 715. Of relevance to the cases at bar, however, is the

dissent's requirement that the condition have been *tortiously* caused. If the only "condition" with respect to a plaintiff's property is that underground mine cavities have been filled with water—a condition that does not in itself give rise to liability to the surface owner—even the dissent's proposed rule would not benefit plaintiffs in these cases.

In *Chance v. BP Chemicals,* 77 Ohio St.3d 17, 670 N.E.2d 985 (1996), in which property owners sued a chemical refiner for damages arising out of alleged lateral migration of an injectate used in connection with the refiner's "deepwell" disposal of waste chemicals, the Supreme Court of Ohio, affirming a combination of directed and jury verdicts for the defendant, stated that even assuming that some of the injectate had migrated under the plaintiffs' properties, "some type of physical damages or interference with use must have been demonstrated for appellants to recover for a trespass." *Id.* at 993. Because no physical damage or interference with use had been shown, the trial court did not abuse its discretion in foreclosing the plaintiffs from introducing evidence of stigma damages.

Other than the condemnation and similar cases that have already been discussed, the remaining cases cited by plaintiffs do not support their claims for stigma damages. In *Rudd v. Electrolux Corp.,* 982 F.Supp. 355 (M.D.N.C.1997), a landowner sued the current and former owners of adjoining property, seeking to recover damages under various theories based on alleged migration of environmental contaminants from the defendants' property to the plaintiff's. On cross-motions for summary judgment, the district court held, *inter alia,* that under North Carolina law, stigma damages are available for permanent, unabatable nuisances and trespasses, and that the plaintiff would be entitled to

present proof of permanent nuisance and trespass. *Rudd,* however, clearly differs from the instant cases in that there was actual contamination of the plaintiff's land in that case. Here, what is at issue are stigma damages associated with property that either has not been damaged in any way or is fully remediable, and has only been altered underground by the flooding of the mine cavities, which this court and the Court of Appeals have already held to be noncompensable.[2]

*Exxon Corp. v. Yarema,* 69 Md.App. 124, 516 A.2d 990 (1986), *cert. denied,* 309 Md. 47, 522 A.2d 392 (1987), also cited by the *Mehlenbacher* plaintiffs, actually hurts rather than helps their position. In *Yarema,* landowners brought an action against the owner of a service station to recover for interference with their property rights resulting from alleged leakage of gasoline from the defendant's storage tanks. The trial court awarded damages to the plaintiffs following a jury verdict in their favor. On appeal, the Court of Special Appeals affirmed. The court rejected the defendant's argument that those plaintiffs whose property suffered no injury from physical contamination could not recover under a nuisance theory. The court said that the plaintiffs' nuisance claim was "not contingent upon whether the defendant physically impinged on plaintiff's property, ... but whether the contamination of water caused by Exxon's leaking storage tanks interfered with the plaintiffs' use and enjoyment of their properties." *Id.* at 1002–03.

The court took pains, however, to note that its

conclusion does not violate the established rule that the mere diminution of property value, absent such tortious interference, is not sufficient basis for recovery.... Our holding that physical impact is not necessary to sustain a tort

---

**2.** I recognize that if any of the plaintiffs' properties have suffered irreparable damage, those plaintiffs may be entitled to an award for diminution in value. *Nashua Corp.,* 1997 WL

204904 *6. Whether plaintiffs have presented any proof of such damage is addressed elsewhere in this Decision and Order.

action does not mean that plaintiffs may recover for diminution of property value without proof of harm to their property but rather that harm to property should be construed broadly to include intangible tortious interferences of plaintiffs' use and enjoyment of their properties. *Id.* at 1004.

The court also dispelled any notion that mere diminution in value could constitute a tortious interference with one's use and enjoyment of property. Distinguishing earlier Maryland cases that had dismissed tort claims where there was no physical damage to the plaintiffs' property, the court pointed out that in those cases, "[t]he plaintiffs could sell the property whenever they chose; they were not precluded from building on their land; and they were not prevented from using water from their wells." *Id.* at 1005. In contrast, the court said, the plaintiffs in *Yarema* had been forbidden by the county health department "from using their ground water, building houses on their land or selling the land *even at a reduced price.*" *Id.* (emphasis added).[3]

■ It is clear, therefore, that the widely accepted if not universal view among the courts in this country is that causing the value of another's property to diminish is not in and of itself a basis for tort liability. Something more—physical invasion or damage, or unreasonable interference with that person's use and enjoyment of the property—is required. In order to recover damages for diminution in value, therefore, property owners must show (1) that their property has been physically damaged, or that their use and enjoyment of their property has been unreasonably in-

terfered with, by the defendant's actions, and (2) either that the trespass or nuisance thus created cannot be fully remediated, or that the cost of remediation would exceed the amount by which the value of the property has been diminished.

## II. Plaintiffs' Claims in *Integrated Waste Services v. Akzo Nobel Salt, Inc.*

■ As stated, the Second Circuit remanded *Integrated Waste* for further proceedings on the issue of surface damages only. The basis for the court's decision to do so was plaintiffs' submission of two reports describing "widespread and ongoing surface subsidence damages as a result of the inundation of the Retsof salt mine." *Integrated Waste*, 113 F.3d at 302. One of those reports was issued by the DEC in August 1995, and the other was prepared for Akzo by Leo L. Van Sambeek, who holds a Ph.D. in mining engineering and who has been retained by Akzo as an expert witness. The court noted that "these reports do not single out the [plaintiffs'] own land or attempt to place a dollar value on the damage to these parcels," and stated that "[t]he record on this point was poorly developed by the plaintiffs ...," and that the evidence submitted by plaintiffs was "meager." *Id.* at 303. Nevertheless, the court held, the evidence presented by plaintiffs was "sufficient to preclude summary judgment on the issue of surface damages." *Id.*

■ Although the Court of Appeals found summary judgment inappropriate at that time, it is clear that this court has discretion to consider defendant's re-

---

3. The other tort case cited by the *Mehlenbacher* plaintiffs, *Everett v. Paschall*, 61 Wash. 47, 111 P. 879 (1910), held that a lower court erred in refusing to enjoin the defendant from operating a tuberculosis hospital in a residential area, where fear of contracting the disease had depreciated the value of the contiguous property by as much as half. Although the court did state that "[t]he question is, not whether the fear is founded in science, but whether it exists ...," *id.* at 880, the court

also indicated that it did not consider the fear in that case to be unreasonable, *see id.* at 881, so it is unclear to what extent, if any, the court's decision rested upon the possibility that the plaintiffs' health had actually been put at risk. At any rate, to the extent that *Everett* stands for the proposition that a cause of action can arise based solely on diminution of property value based on public fear, I find that this does not represent the majority view or the law in New York today.

newed motion based upon the record as it now stands. *See, e.g., LaPointe v. UAW Local 600*, 103 F.3d 485, 486–87 (6th Cir. 1996) (after prior reversal of district court decision granting summary judgment for defendants, defendants renewed their motion, parties submitted new briefs and additional evidence, and district court again granted summary judgment, which Court of Appeals affirmed); *Armijo v. Atchison, Topeka and Santa Fe Ry. Co.*, 87 F.3d 1188, 1189 (10th Cir.1996) (same); *Sanchez v. United States*, 878 F.2d 633, 636 (2d Cir.1989) (finding no procedural flaw in district court's grant of summary judgment for defendant following remand from reversal of prior dismissal of complaint, since in support of new motion, defendant had produced new evidence relating to underlying facts); *see also Jackson v. Widnall*, 99 F.3d 710, 713 (5th Cir. 1996) ("a trial court may reconsider a previously denied motion for summary judgment even in the absence of new evidentiary material"); *Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 245–46 (2d Cir.1983) (trial court has discretion to reconsider interlocutory ruling denying motion for summary judgment). After reviewing the additional materials submitted by the parties following the remand from the Second Circuit, I find that defendant is entitled to summary judgment on plaintiffs' remaining claims in *Integrated Waste.*

Defendant has submitted an updated report and a new declaration by Dr. Van Sambeek. He Based upon his investigation, Dr. Van Sambeek concludes that on "the vast majority" of plaintiffs' property, "neither sinkholes nor physical damage to the surface properties and buildings could have occurred. As to the small balance of the plaintiffs' remaining acreage, subsidence has been insubstantial and uniform and should not have caused sinkholes or damage to the surface land or buildings." Declaration of Dr. Leo L. Van Sambeek, dated July 30, 1988, ¶ 3. Dr. Van Sambeek based this opinion on extensive subsidence measurements that have been taken in the area since the collapse occurred, on maps of the area showing the location of plaintiffs' properties in relation to the mine and the collapse site, and on his own personal observations of the area.

In response, plaintiffs have submitted no new evidence whatsoever. They have presented no additional evidence that their properties have suffered any physical surface damage as a result of the collapse, and their papers are devoted entirely to their claim that they are entitled to stigma damages even in the absence of physical damage.

Based on this record, I find that plaintiffs have failed to carry their burden to show the existence of a genuine issue of material fact concerning their claim for surface damage. Although the Second Circuit did state that plaintiffs' evidence "was sufficient to preclude summary judgment on the issue of surface damages," 113 F.3d at 303, that statement was made in the context of the record as it existed before the Court of Appeals *at that time.* The picture has now changed considerably, however.

As stated, defendant has presented a considerable amount of new evidence relating to the location and extent of surface damage over the mine area. In opposition to defendant's motion, however, plaintiffs continue to rely solely on the same "meager" evidence they presented before, *i.e.* the two reports noted by the Second Circuit. One of those reports, however, is by Dr. Van Sambeek, and it is now clear that he does **not** believe that plaintiffs' properties have been damaged. His earlier report and the DEC report, neither of which was concerned specifically with plaintiffs' property, did state that surface damage had occurred in some areas, which left open the possibility that some of that damage took place on plaintiffs' land. In his July 30, 1998 declaration, however, which relates directly to plaintiffs' property, Dr. Van Sambeek sets forth his opinion, together with the evidence upon which it is

based, that plaintiffs' lands have suffered no surface damage. Since this new evidence had not been presented on the prior appeal to the Second Circuit, I do not believe that the Court of Appeals' holding that summary judgment was improper on the record before it at that time precludes me from again entering summary judgment based upon the augmented record before me. *LaPointe*, 103 F.3d at 486–87; *Armijo*, 87 F.3d at 1189.

■ Defendant having proffered this additional evidence, I conclude that plaintiffs cannot simply rest on the "meager" showing that they presented on defendant's prior summary judgment motion. Once defendant has made a well-supported motion for summary judgment, plaintiffs "must do more than simply show that there is some metaphysical doubt as to the underlying facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, plaintiffs must come forward with "concrete evidence from which a reasonable juror could return a verdict in [their] favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiffs have not carried that burden. Defendant has now presented evidence indicating that plaintiffs' property has suffered no surface damage at all, and plaintiffs have submitted nothing in rebuttal. Given this evidence relating directly to plaintiffs' property, the mere fact that *some* areas over the mine had some surface damage is simply not enough to defeat defendant's motion. Since plaintiffs have not presented any evidence tending to cast doubt on the validity of Dr. Van Sambeek's conclusions, but instead rely entirely on their claims for stigma damages, I conclude that they have done no more than to show a "metaphysical doubt" about the issue of surface damage, and defendant is therefore entitled to summary judgment on all of plaintiffs' remaining claims in *Integrated Waste*.

## III. Plaintiffs' Claims in *Mehlenbacher v. Akzo Nobel Salt, Inc.*

### A. Claims for Diminution in Value by Plaintiffs Who Have Sustained Surface Damage

■ As stated, for plaintiffs to recover damages for diminution in property value, they must show two things: (1) that their surface property has been physically damaged, or that their use and enjoyment of their property has been unreasonably interfered with, by Akzo's activities; and (2) either that the trespass or nuisance thus created cannot be fully remediated, or that the cost of remediation would exceed the amount by which the value of the property has been diminished.

To the extent that plaintiffs seek *only* stigma damages, then, they cannot recover. Akzo contends, however, that even those plaintiffs who have experienced surface damage cannot seek damages for diminution in property value, because according the Akzo the incontrovertible proof shows that all of those plaintiffs' properties either have been, or can be, fully restored by repairs, for the cost of which Akzo concedes its liability.

■ The general rule in New York is that the measure of damages for injury to real property is the lesser of the repair costs or the diminution in market value. *Jenkins v. Etlinger*, 55 N.Y.2d 35, 447 N.Y.S.2d 696, 698, 432 N.E.2d 589 (1982); *Property Owners Ass'n v. Ying*, 137 A.D.2d 509, 524 N.Y.S.2d 252, 254 (2d Dep't 1988). There is also authority that both types of damages may be awarded where the property cannot be fully restored by repairs, which is consistent with the purpose of such damages, which is to make the plaintiff whole. *See Scribner*, 138 F.3d at 473; *Nashua Corp.*, 1997 WL 204904 *6.

In the case at bar, defendant contends that all of plaintiffs' properties are fully remediable. Although plaintiffs have not rebutted that assertion at this point, I

nevertheless believe that summary judgment would be premature. Pursuant to several case management orders that have been issued in this action, discovery has thus far been limited to discovery relevant to plaintiffs' motion for class certification. Under these circumstances, I am not prepared simply to accept defendant's assertion that all of plaintiffs' properties either have been or can be fully remediated.

Akzo also contends that any diminution in value that has occurred has not been proximately caused by the mine collapse, but by unreasonable, irrational public fears based on misinformation about the danger of future collapses or flooding. Assuming that a property that has been physically damaged cannot be fully restored, however, that argument clearly fails. The remaining, irreparable damage to the property could itself be the cause of the diminution in value. At any rate, I believe that summary judgment on these claims is not appropriate at this juncture, since these matters involve a number of factual issues that may need to be more fully explored in discovery.

## B. Claims for Emotional Distress

■■■ Defendant has moved to dismiss all claims that plaintiffs have made to recover damages for emotional distress that is not related to any physical illness or injury. In response, plaintiffs state that they are not asserting a separate cause of action for either intentional or negligent infliction of emotional distress, but only seek damages for the effects that the mine collapse has had on their "quality of life." Among the adverse consequences that plaintiffs claim to have suffered in this regard are such things as insomnia, emotional stress, mood swings, inability to concentrate, etc.

In support of their assertion that they may recover such damages, plaintiffs cite the Second Circuit's decision in *Scribner*, in which the court upheld this court's award of $12,000 in "quality of life damages" to the plaintiffs for several years of inconvenience and aggravation resulting from barium contamination of their property caused by the defendants. *Scribner*, 138 F.3d at 472, 474. In reply, defendant contends that *Scribner* is inapplicable here because those damages were based on the plaintiffs' trespass and nuisance claims. Defendant notes that the *Mehlenbacher* plaintiffs have not asserted a trespass claim, and further assert that plaintiffs "have no cause of action for nuisance." Defendant's Reply Memorandum of Law at 9.

It is true that plaintiffs have not asserted a trespass claim, but I do not agree with defendant that none of the plaintiffs has stated a facially valid nuisance claim. First, I note that the complaint itself does assert a cause of action for nuisance; *see* Complaint ¶¶ 31–34. Second, defendant's own papers indicate an implicit recognition that at least some plaintiffs may be able to make out a nuisance claim. In its reply brief in support of its motion for partial summary judgment, defendant focuses on its contention that mere diminution in property is not an invasion of one's interest in the use and enjoyment of one's property. In both its original and reply briefs, however, defendant has not asserted that *all* the plaintiffs' nuisance claims should be dismissed, but only that purported nuisance claims that do not relate to plaintiffs' use of their own homes should be dismissed. Defendant points out that some of the plaintiffs have alleged, for example, that the mine collapse has caused them inconvenience and discomfort because a certain road had to be closed for some time, forcing those plaintiffs to take a lengthy detour. Defendant does not contend, however, that *no* plaintiffs have alleged interference with their use and enjoyment of their own homes, and indeed, at least some have. For example, plaintiffs Gary and Carol Murphy allege that as a result of the collapse, their home has sustained structural damage that has caused the roof to leak and water to enter their basement. Plaintiffs Melissa and Timothy

Jacobs allege that bees have infested the cracks in their porch that were caused by the collapse, rendering the porch unusable.

Plaintiffs' claims for "quality of life" damages, then, cannot simply be dismissed on the ground that there are no valid claims upon which to base such damages. The issue is therefore whether these damages are recoverable as a matter of law.

In New York, "[i]t is settled that discomfort and inconvenience caused by a disturbance to real property are valid grounds of recovery in an action to recover damages for a nuisance." *Taylor v. Leardi,* 120 A.D.2d 727, 728, 502 N.Y.S.2d 514 (2d Dep't 1986); *accord Dixon v. New York Trap Rock Corp.,* 293 N.Y. 509, 514, 58 N.E.2d 517 (1944); *Nalley v. General Elec. Co.,* 165 Misc.2d 803, 630 N.Y.S.2d 452, 455 (Sup.Ct. Rensselaer County 1995). There is some authority that damages may be awarded for emotional distress caused by the nuisance. *See Cornell v. Exxon Corp.,* 162 A.D.2d 892, 894, 558 N.Y.S.2d 647 (3d Dep't 1990) (plaintiffs' allegations, including allegations of emotional and mental distress, sufficiently stated cause of action for nuisance).

Clearly, then, at least some of plaintiffs' allegations concerning the effects that the mine collapse has had on them personally might legitimately be taken into account by the jury in assessing the degree to which the collapse has affected the plaintiffs' use and enjoyment of their property. That is not to say that every type of alleged inconvenience (such as hostility directed at plaintiffs by Akzo employees) could be compensable. Rather than attempt to sort out each and every such allegation at this point, however, I believe that it would be preferable to deal with these issues at trial, either by way of an *in limine* ruling or in fashioning the jury charge.

## C. Claims for Ultrahazardous Activity

Defendant moves to dismiss plaintiffs' second cause of action, which alleges that defendant is strictly liable to plaintiffs because it conducted an abnormally dangerous activity. Specifically, plaintiffs allege that defendant engaged in what plaintiffs describe as "small pillar" mining, *i.e.,* using relatively narrow pillars of salt to hold up the roof of the mine.

Defendant notes that I have already dismissed plaintiffs' abnormally-dangerous-activity claim in *Integrated Waste* on the ground that "plaintiffs' proof d[id] not indicate that the risk of collapses could not have been eliminated through the exercise of reasonable care...." *Integrated Waste,* 921 F.Supp. at 1045. Under New York law, an activity will generally not be found to be abnormally dangerous if the risk associated with the activity could have been eliminated or controlled through the exercise of reasonable care. *See id.* (collecting cases). Plaintiffs contend that since my decision in *Integrated Waste* has no res judicata effect in *Mehlenbacher* (which Akzo concedes), they should at least be permitted to conduct discovery before the court considers summary judgment on this claim.

Although I harbor serious doubts about the viability of this claim, I will deny defendant's motion at this time. Plaintiffs' nuisance claims can proceed, at least in part, and discovery is unlikely to be significantly lengthened or widened in scope if plaintiffs' claim for abnormally dangerous activity is allowed to remain. I therefore see no prejudice to defendant if plaintiffs are allowed to prosecute this claim at this point. Whether it can survive following the close of discovery is another matter, but at this stage defendant's motion for summary judgment on this claim is denied.

## IV. Plaintiffs' Motion for Class Certification

Plaintiffs in *Mehlenbacher,* which was filed as a class action, have moved to certify the proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure. Defendant opposes the motion on the

grounds that it is untimely as well as on the merits.

Plaintiffs propose four subclasses, all within a thirteen-mile radius of the collapsed mine (which plaintiffs allege is about the extent of the damage): (1) "The Residential Property Damage Subclass," consisting of residential homeowners whose property values have been adversely affected, whose property has been physically damaged, or who have lost their use and enjoyment of their property due to the mine collapse; (2) "The Commercial Economic Loss Subclass," consisting of business owners who have suffered economic losses related to the mine collapse, including diminution in value of their businesses or properties, lost sales or increased costs of doing business; (3) "The Economic Loss Subclass," consisting of all persons who live or work in the area who have suffered economic loss due to the collapse, including the expense of securing alternate water supplies, the costs of remediating adverse physical effects on their property, lost wages or other economic losses; and (4) "The Personal Injury Subclass," consisting of all persons who have suffered physical or emotional injuries or contamination of their water supplies due to the collapse.

Rule 23(a) provides four prerequisites for maintaining a class action: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class.

As stated previously, it appears that many of the plaintiffs have not sustained any actual physical damage to their property, and in accordance with this court's ruling on stigma damages, the claims of those plaintiffs who only seek damages for diminution in property value unrelated to actual physical surface damage must be dismissed. Plaintiffs' own proposal for the four subclasses indicates that some of the class members may be asserting only claims for diminution in property value not associated with any physical damage.

Obviously, then, this case stands in a different posture with respect to the issues of numerosity, typicality, etc. than it did when the motion for class certification was filed. Since it would be difficult if not impossible for the court to attempt to determine these issues based on the record as it now stands, I believe the wisest course is to deny plaintiffs' motion for class certification without prejudice. If plaintiffs believe that, even given my decision with respect to the nonrecoverability of stigma damages, class certification is still appropriate, they may renew their motion accordingly, submitting whatever new materials they believe necessary.

## CONCLUSION

In *Integrated Waste Services, Inc. v. Akzo Nobel Salt, Inc.*, 95–CV–6247L, defendant Akzo Nobel Salt, Inc.'s Motion for Summary Judgment (Docket Item 23) is granted, and the complaint is dismissed. Plaintiff's cross-motion for summary judgment (Dkt.# 25) is denied.

In *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 94–CV–6343L, defendant Akzo Nobel Salt, Inc.'s Motion for Partial Summary Judgment (Docket Item 29) is granted in part and denied in part. The claims of all plaintiffs who seek only damages for the diminution in value of their property, not associated with any actual surface damage to their property, are dismissed. In all other respects, the motion is denied.

Plaintiffs' Motion for Class Certification in *Mehlenbacher v. Akzo Nobel Salt, Inc.* (Docket Item 22) is denied without prejudice.

IT IS SO ORDERED.

PLEASE take notice of the entry of an ORDER filed on 9/28/99, of which the within is a copy, and entered 9/28/99 upon

the official docket in this case. (Document No. 37.)