Theodore W. KHEEL et al., Plaintiffs-Appellants,

v.

The PORT OF NEW YORK AUTHORITY et al., Defendants-Appellees.

No. 367, Docket 71–1917.

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1972.

Decided March 24, 1972.

---

Theodore W. Kheel, New York City (Battle, Fowler, Stokes & Kheel, Raymond F. Gregory, Lewis B. Kaden, Richard Adelman and Robert Kheel, New York City, of counsel), for appellants.

Joseph Lesser, Chief, Opinions & Appeals Div., Port of N. Y. Authority (Sidney Goldstein, Gen. Counsel, Isobel E. Muirhead, Arthur P. Berg and John J. Graubard, Attys., Port of N. Y. Authority, of counsel), for appellees Port of N. Y. Authority, its Commissioners and Executive Director.

Daniel M. Cohen, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York), for appellee Atty. Gen. of New York.

Before SMITH, HAYS and MULLIGAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Appellants, a group of residents, citizens, taxpayers of New York City and state, and users of mass transportation facilities in the city, challenge a 1962 New York statute which limits the Port of New York Authority's power to construct or invest in non-self-supporting railroad transportation facilities. N.Y. Unconsol.Laws § 6606 (McKinney Supp. 1971). Appellants claim that this legislation, which in addition to the provisions complained of, authorized the Port Authority to purchase the Hudson-Manhattan Tubes and build the World Trade Center in lower Manhattan, prevents the Authority from fulfilling its duty to plan and construct coordinated transportation facilities in the port district. They claim that the statute is unconstitutional because it is an interstate compact not approved by Congress, in violation of Article 1, § 10, clause 3 of the United States Constitution, and because it is an improper delegation of legislative authority in violation of the Fourteenth Amendment. Kheel requests the issuance of a declaratory judgment that the 1962 legislation is unconstitutional and that the Port Authority is violating its mandate and an order that the Authority submit to the court a plan for the development of transportation in the port area. The United States District Court for the Southern District of New York (Harold R. Tyler, Judge) dismissed the suit on the basis of lack of a substantial federal question, 331 F.Supp. 118. We affirm on the ground of failure to meet the jurisdictional amount under 28 U.S.C. § 1331(a).

The Port Authority was created in 1921 by a compact between New York and New Jersey, to which the consent of Congress was obtained. Laws of New York, 1921, Art. VI, Ch. 154; Laws of New Jersey, 1921, Ch. 151; Pub.Res. No. 17, 67th Cong., 1st Sess., 42 Stat.

174 (1921). The purpose of the compact was to coordinate the growth of transportation and terminal facilities in the port area. Transportation facilities were broadly defined and included railroad facilities "for use for the transportation or carriage of persons or property." N.Y. Unconsol.Laws § 6423 (McKinney 1961). The Authority was ordered to devise plans for the development of the port district from time to time, but few specific duties were imposed. Future projects were contingent on the development by the two states of a comprehensive plan for the port. Art. XI, VI, X, 1921 Compact.

The comprehensive plan was passed in 1922. Laws of New York, 1922, Ch. 43; Laws of New Jersey, 1922, Ch. 9; 42 Stat. 822 (1922). Most of the provisions were directed at alleviation of freight problems, the most pressing difficulty in the port area at that time. Although the early emphasis was on freight transportation, the Authority was empowered to construct tunnels and bridges, which would also benefit passengers, and to proceed with further projects when directed by the states to do so.[1]

In 1962 the two legislatures passed the statutes under attack in this litigation. Laws of New York, 1962, Ch. 209; Laws of New Jersey, 1962, Ch. 8. They authorized and ordered the Authority to acquire the Hudson Tubes railroad system and to construct a World Trade Center in lower Manhattan. In directing the Authority to enter the field of passenger railroad operations (with the Hudson Tubes), of which none in the port area is self-supporting, the states provided that the Authority "not proceed with the effectuation of any railroad or railroad facility in addition to the Hudson tubes and the Hudson tubes extensions until hereafter expressly authorized by the two states." N.Y.Unconsol.Laws § 6603 (McKinney Supp. 1971).

In addition, the states and Authority bondholders covenanted that "neither the states nor the Port Authority nor any subsidiary corporation incorporated for any of the purposes of this act will apply any of the rentals, tolls, fares, fees, charges, revenues, or reserves, which have been or shall be pledged in whole or in part as security for such bonds, for any railroad purposes whatsoever other than permitted purposes hereinafter set forth." Permitted purposes do not include passenger railroads that are not self-supporting or do not operate within strict deficit limits outlined in section 6606.[2]

■ The district court dealt only with the issue of the presence of a federal question to confer jurisdiction on the court. We find it unnecessary to reach that point, however, for plaintiffs did not show the requisite $10,000 in controversy as required for federal jurisdiction under 28 U.S.C. § 1331. The burden of proving jurisdictional prerequisites lies on the party who seeks the exercise of jurisdiction in his favor. "[I]nquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf . . . [H]e must carry throughout the litigation the burden of showing that he is properly in court." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135

1. In 1959 the states passed concurrent legislation permitting the Authority to purchase and own railroad cars for the purpose of leasing them to commuter railroads within the electing state. The money used by the Authority to purchase the cars had to be guaranteed by the state before the Authority could proceed. Laws of New York, 1959, Ch. 638; Laws of New Jersey, 1959, Ch. 25.

2. Effective June, 1971, the states directed the Port Authority to provide rail access to Kennedy and Newark Airports from Newark and New York. Laws of New York, 1971, Chs. 474, 475; Laws of New Jersey, 1971, Ch. 245. Studies are presently being done by financial and engineering consultants on the project. The question of any incompatibility of the rail links legislation with the 1962 bondholders covenant with the states is not raised in this action.

(1936); Post. v. Payton, 323 F.Supp. 799, 804 (E.D.N.Y.1971).

 Generally, for this reason, the amount in controversy is calculated from the plaintiff's standpoint; "the value of the suit's intended benefit" or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested. Massachusetts State Pharmaceutical Assn. v. Federal Prescription Service, 431 F.2d 130 (8th Cir. 1970); Wright, Federal Courts §§ 33, 34 (2d ed. 1970). Appellants allege that the difference between the amount Mr. Kheel must now spend on taxicabs and other means of transportation around the city in connection with his work and the lesser amount he would spend were the mass transport system adequate to his needs is the amount in controversy. This difference is alleged to be $25 a week or $1350 a year. Assuming an annual expenditure of this magnitude for the next nine years (i.e. until Mr. Kheel reaches retirement age) $10,000 is exceeded.[3]

 Appellees claim that these damages are too indirect and speculative to support federal jurisdiction, for it is not at all clear that victory in this lawsuit and the declaration that section 6606 is unconstitutional would lead directly, or even indirectly, to a lessening of transportation costs or provision of radically better service in the near future, given the complex and slow-moving nature of major mass transportation renovation. We agree. As this court said in Rosado v. Wyman, 414 F.2d 170 (2d Cir. 1969), rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d

442 (1970), " 'Indirect damage' is too speculative to create jurisdiction under Section 1331." 414 F.2d at 176. The federal courts cannot take cognizance under section 1331 of cases in which the rights are not capable of valuation in monetary terms. And the jurisdictional test is applicable to that amount that flows directly and with a fair degree of probability from the litigation, not from collateral or speculative sources. Rosado, supra; Kiernan v. Lindsay, 334 F. Supp. 588 (S.D.N.Y.1971); Johnson v. New York State Education Department, 319 F.Supp. 271 (S.D.N.Y.1970), aff'd on other grounds, 449 F.2d 871 (2d Cir. 1971).[4]

The cost to Kheel for his transportation falls under this interdiction. Were section 6606 declared unconstitutional, plaintiffs would receive no direct economic benefit, for the desired new subways and buses would be far from realization. At this point it is pure conjecture to suggest when they would appear and how much money they would save plaintiffs.[5] Nor is Berk v. Laird, 429 F.2d 302 (2d Cir. 1970), cited by plaintiffs, apposite. In that case a serviceman sought an injunction against those military officers who had ordered him to Vietnam and Cambodia. The court found an allegation that plaintiff's earning capacity might be impaired in excess of $10,000 by serious injury or death sufficient to create federal jurisdiction. In that situation, a serious question of personal liberty was involved and plaintiff had no forum other than the federal court in which to seek redress. As the court in Kiernan v. Lindsay, supra,

3. The Port Authority claims that this sum, when capitalized to its present value, does not exceed $10,000. Relying as we do on the nature, rather than the amount of the expenses, we need not enter into nice questions of capitalization technique.

4. In that case plaintiffs challenged a New York statute which granted free textbooks to school children in grades 7–12 but not to those in grades 1–6. The court found that damage resulting from reasonably anticipated loss of educational opportunity

was too speculative to support federal jurisdiction.

5. Nor is it clear that future costs such as those plaintiffs claimed can be taken into account for jurisdictional purposes. See Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1971); Dougall v. Sugarman, 330 F.Supp. 265 (S.D.N.Y. 1971); Greater Hartford Free Bridge Association v. Greater Hartford Bridge Authority, 172 F.Supp. 244 (D.Conn. 1958), aff'd 265 F.2d 656 (2d Cir. 1959).

stated, that holding ought to be narrowly construed and confined to its rather unique facts.[6]

 For the above reasons, we find that the amount in controversy does not exceed $10,000 and that the order of dismissal must be affirmed.

---

6. Similarly, Friedman v. International Ass'n of Machinists, 95 U.S.App.D.C. 128, 220 F.2d 808, cert. denied, 350 U.S. 824, 76 S.Ct. 51, 100 L.Ed. 736 (1955) involved a situation in which it was virtually certain that plaintiff workman would suffer damages of more than $3,000 as a direct result of loss of union membership, at issue in the action.