Terry **MEHLENBACHER**, Lyn Mehlenbacher, Nancy Glazier, Kirk Richenberg, William Benson, Deborah Benson, John Miliken, Individually and d/b/a Cuylerville Service, John Hendrickson, Individually, The Shepard's Fold Church, by John Hendrickson, its Pastor, John Argennia, Phyllis Argennia, Individually and d/b/a Argennia's Restaurant, Mark Bailey, Brenda Bailey, Earl Hill, Karen Hill, Timothy Jacobs, Melissa Jacobs, Gary Myers, Cindy Morrison, Gary Murphy and Carol Murphy, Individually and on behalf of all those similarly situated, Plaintiffs–Appellants,

v.

**AKZO NOBEL SALT, INC.,** formerly known as Akzo Salt, Inc., Defendant–Appellee.

No. 99–9469.

United States Court of Appeals, Second Circuit.

Argued: May 25, 2000.

Decided: June 20, 2000.

See also, 113 F.3d 296.

Richard J. Lippes, Allen & Lippes, Buffalo, N.Y., for Plaintiffs–Appellants.

Kenneth A. Payment, Harter, Secrest & Emery LLP, Rochester, N.Y. (A. Paul Britton, on the brief), for Defendant–Appellee.

Before: McLAUGHLIN and CALABRESI, Circuit Judges, and MUKASEY, District Judge.*

* The Honorable Michael B. Mukasey, of the United States District Court for the Southern District of New York, sitting by designation.

CALABRESI, Circuit Judge:

This action arose out of the collapse of a salt mine owned by defendant Akzo Nobel Salt, Inc. ("Akzo"). Plaintiffs, who own property in the area surrounding the mine, seek to recover for, *inter alia*, diminution in the value of that property stemming from public fear of the mine collapse; some, but not all, plaintiffs also seek recovery for physical damage to their property. In a final order, the United States District Court for the Western District of New York (David G. Larimer, *Chief Judge*) granted summary judgment to Akzo as to the claims of those plaintiffs who alleged only diminution in property value, with no accompanying physical damage. *See Mehlenbacher v. Akzo Nobel Salt, Inc.,* 71 F.Supp.2d 179, 193 (W.D.N.Y.1999). For the following reasons, we vacate the judgment of the district court and remand for further proceedings.[1]

## I

For many years, Akzo operated the largest salt mine in North America, in Retsof, New York. In March 1994, part of the mine collapsed, allegedly because Akzo used a risky small-pillar mining technique that did not provide enough surface support.[2] The collapse led to flooding that completely inundated the mine cavities and made further mining impossible; the mine is now closed. As Akzo concedes, the collapse also damaged the land above the mine. In the area of about 50 acres nearest to the collapse, the surface subsided more than fifteen feet, creating deep sinkholes, and causing cracks in buildings and the destruction of a bridge. Additional subsidence damage occurred in a larger area of about 1,000 acres northeast of the collapse. Akzo alleges that, outside those

areas, no physical damage to property occurred.

In June 1994, Terry Mehlenbacher and the other named plaintiffs brought this putative class action in New York state court, seeking to represent a class composed of all individuals and businesses who reside, work, or own property within a ten-mile radius of the mine and who suffered damages due to the collapse of the mine. Plaintiffs alleged that the mine collapse had resulted in physical damage to property and buildings, adverse effects on the quantity and quality of well water in the area, personal injuries (including emotional injuries), and economic losses, including "stigma" damages for diminution in the value of plaintiffs' property due to public fear of the consequences of the mine collapse. The complaint stated claims sounding in negligence, strict liability due to an abnormally dangerous activity, nuisance, and gross negligence. It sought compensatory and punitive damages and injunctive relief "requiring the Defendant to take such action as to assure that the mine is shored up, the flooding ceased, and ... the mine is stabilized." State complaint at 11–12. Plaintiffs did not specify the amount of damages sought.

Akzo filed a timely notice seeking to remove the case to the United States District Court for the Western District of New York. Akzo asserted that the district court could exercise jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332(a) (1994). It alleged that complete diversity existed between it and all the named plaintiffs, because Akzo was a New Jersey corporation and all the named plaintiffs, according to their complaint, were residents of New York. Akzo

1. This appeal was consolidated with another appeal of an action for damages from the mine collapse, *Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc.,* No. 99–9317, 2000 WL 823365, 216 F.3d 1072. That appeal is decided by a separate summary order filed concurrently with this opinion.

2. Until shortly before the collapse, Akzo had employed the "large-pillar" method, which supported the surface with large pillars of salt. The small-pillar method involved harvesting some of the salt from the large pillars in areas where it was thought that other geological features would provide adequate surface support.

contended that the amount in controversy necessary for diversity jurisdiction (which at the time was $50,000, *see id.*) was satisfied "given the multiplicity of plaintiffs and their claim for punitive damages." Notice of removal at 2. Plaintiffs did not contest the removal, and the district court allowed it.

In January 1995, plaintiffs filed an amended class action complaint, asserting the same causes of action as had their state complaint. In the new complaint, plaintiffs sought to represent a broader class of all individuals and businesses who reside, work, or own property within a thirteen-mile radius of the mine and who suffered damages due to the mine collapse. That class, according to plaintiffs, was composed of four subclasses: (1) residential homeowners whose property values were adversely affected, who incurred physical damage to their property, or who lost the use and enjoyment of their property; (2) commercial property owners who suffered economic losses, including diminution in the value of their property or lost profits; (3) persons who live or work within the thirteen-mile radius who suffered economic losses, including "the expense of securing alternative water supplies," the cost of remediating damage to their property, and lost wages; and (4) persons who suffered personal injuries or emotional distress due to the mine collapse or resulting water contamination. The parties conducted discovery limited to the class certification issue, and, in March 1998, plaintiffs filed a motion for class certification under Federal Rule of Civil Procedure 23(b)(3), which Akzo opposed.

Before the district court had ruled on the motion for class certification, Akzo moved for partial summary judgment dismissing all the plaintiffs' claims for (1) stigma damages and (2) emotional distress unrelated to actual physical illness or injury, including emotional distress related only to property damage. The district court granted Akzo's motion for summary judgment in part and denied it in part.

*See Mehlenbacher,* 71 F.Supp.2d at 193. The court held that plaintiffs could not recover "stigma damages"—damages for diminution in property value unaccompanied by any actual physical damage to the property. In doing so, it noted that "the New York case law on this subject is neither extensive nor particularly apt," but that a majority of the cases from other jurisdictions indicated that stigma damages were not recoverable. *Id.* at 185. After reviewing numerous cases, the court concluded:

> [T]he widely accepted if not universal view among the courts in this country is that causing the value of another's property to diminish is not in and of itself a basis for tort liability. Something more—physical invasion or damage, or unreasonable interference with that person's use and enjoyment of the property—is required. In order to recover damages for diminution in value, therefore, property owners must show (1) that their property has been physically damaged, or that their use and enjoyment of their property has been unreasonably interfered with, by the defendant's actions, and (2) either that the trespass or nuisance thus created cannot be fully remediated, or that the cost of remediation would exceed the amount by which the value of the property has been diminished.

*Id.* at 188. Finding that those plaintiffs who alleged no physical damage to their property could not satisfy the first prong of that test, the district court dismissed their claims for stigma damages. *See id.* at 190.

The court declined, however, to grant summary judgment as to the plaintiffs who sought to recover *both* for physical surface damage and for diminution in the market value of their property. The court noted (1) that "[t]he general rule in New York is that the measure of damages for injury to real property is the lesser of the repair costs or the diminution in market value," but that "[t]here is also authority that both

types of damages may be awarded where the property cannot be fully restored by repairs," and (2) that Akzo had failed to show the absence of any material issue with respect to whether the damage to plaintiffs' property was fully remediable. Id. at 190–91.[3]

Finally, the court declined, for the time being, to certify the proposed class under Rule 23(b)(3), noting that it had dismissed the claims of potential class members seeking to recover only for stigma damages and that this dismissal changed the contours of the numerosity and typicality issues, making them difficult to decide on the current record. Accordingly, it denied the motion for class certification without prejudice. See id. at 193.

Appellants then moved for an order pursuant to Rule 54(b) entering a final judgment, so that they could immediately appeal the dismissal of the stigma claims.[4] Finding that judicial efficiency would be furthered by allowing all of plaintiffs' claims to be tried together, should the court of appeals reinstate the stigma claims, the district court granted the motion.

The plaintiffs whose claims for stigma damages were dismissed now appeal, arguing that New York law does allow them to recover such damages.

## II

Neither party has raised the issue of whether this case was properly removed from state court to the federal district court. Nevertheless, because "a challenge to subject matter jurisdiction cannot be waived," Alliance of Am. Insurers v. Cuomo, 854 F.2d 591, 605 (2d Cir. 1988), and because "[w]here jurisdiction is lacking, ... dismissal is mandatory," United Food & Commercial Workers Union Local 919 v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir.1994), we are obligated, nostra sponte, to consider whether the requirements of the diversity jurisdiction statute were satisfied in this case. Because, on the current record, we cannot determine that those requirements were satisfied, we remand to the district court for further proceedings on the jurisdictional issue. See, e.g., E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 940 (2d Cir.1998); United Food, 30 F.3d at 306.

The diversity jurisdiction statute in effect at the time this action was begun in state court, and at the time it was removed, required that "the matter in controversy exceed[ ] the sum or value of $50,000, exclusive of interest and costs, and [be] between," inter alia, "citizens of different States." 28 U.S.C. § 1332(a)(1)

---

**3.** The district court also declined to grant summary judgment on these plaintiffs' claims for emotional distress unrelated to physical illness or injury. The court noted that this claim could be construed as a claim sounding in nuisance and seeking to recover for invasion to the plaintiffs' interest in the quiet use and enjoyment of their property. See Mehlenbacher, 71 F.Supp.2d at 191. And it pointed out that in New York, "[i]t is settled that discomfort and inconvenience caused by a disturbance to real property are valid grounds of recovery" in a nuisance action, id. at 192 (quoting Taylor v. Leardi, 120 A.D.2d 727, 502 N.Y.S.2d 514 (1986)) (internal quotation marks omitted), and that "[t]here is some authority that damages may be awarded for emotional distress caused by the nuisance," id.

In addition, the district court denied summary judgment as to the plaintiffs' second cause of action, which alleged that Akzo was strictly liable to them because it conducted an ultrahazardous activity, saying that although it "harbor[ed] serious doubts about the viability of this claim," there would be no harm in allowing it to proceed, since plaintiffs could go forward with discovery on their nuisance claim in any event. Id.

**4.** Rule 54(b) provides that "[w]hen more than one claim for relief is presented in an action, ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed.R.Civ.P. 54(b).

(1994).[5] Because Akzo sought to remove plaintiffs' suit to federal court, Akzo bore the burden of establishing that the requirements for diversity jurisdiction were met. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *United Food*, 30 F.3d at 305.

The record indicates, and Akzo noted in its removal petition, that all of the named plaintiffs are domiciled in New York, while Akzo is a citizen of New Jersey. Moreover, if the district court certifies this suit to proceed as a class action, diversity would not be defeated even if some members of the class who are not named plaintiffs are citizens of New Jersey, since a class action may be maintained in federal court so long as the representative parties are completely diverse. *See Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Accordingly, the requirement that an action be between citizens of different states is seemingly met.

Satisfaction of the amount in controversy requirement is far more problematic, however. Akzo "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *United Food*, 30 F.3d at 305 (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994)) (internal quotation marks omitted). To determine whether that burden has been met, we look first to the plaintiffs' complaint and then to Akzo's petition for removal. *See Davenport v. Procter & Gamble Mfg.*

*Co.*, 241 F.2d 511, 514 (2d Cir.1957). In this case, the plaintiffs' state complaint did not specify the particular amount of damages sought; its *ad damnum* clause merely requested that plaintiffs recover "the damages determined to have been sustained by each of them," together with an unspecified sum of punitive damages.[6] State complaint at 11. In its petition for removal, Akzo claimed that the amount in controversy was satisfied "given the multiplicity of plaintiffs and their claim for punitive damages." Notice of removal at 2. Akzo nowhere alleged that each plaintiff— or, indeed, any plaintiff—individually met the $50,000 jurisdictional requirement. Instead, Akzo seemingly assumed that the damages sought by plaintiffs could be aggregated to satisfy the statutory figure.

Such an assumption was unwarranted. The Supreme Court has long held that separate and distinct claims raised by different plaintiffs may not be aggregated to satisfy the jurisdictional amount in controversy. *See Snyder*, 394 U.S. at 336, 89 S.Ct. 1053. And, in *Snyder*, the Court reaffirmed that the same rule applies to class actions.[7] *See id.* at 338, 89 S.Ct. 1053. The claims raised by the plaintiffs here are separate and distinct from one another, as they seek recovery for their losses as individuals only, and not collectively. *See generally Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1422 (2d Cir.1997) (listing some of the circumstances under which plaintiffs' claims are properly considered separate and distinct); *see also Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia v. Dow Quimica de Colombia S.A.*, 988

---

5. The jurisdictional threshold has since been raised to $75,000. *See* 28 U.S.C. § 1332(a) (amended 1996).

6. Nor did plaintiffs' amended complaint filed in federal court assert any specific amount of damages.

7. Because this suit was brought as a class action, we treat it as such even though the district court has not yet granted the plaintiffs' motion for class certification. *See City of Inglewood v. City of Los Angeles*, 451 F.2d

948, 951 (9th Cir.1971) ("[I]t was proper for the district court to assume the suit was a class action in order to determine if it had jurisdiction ... and ... this court must likewise assume this was a class action until a contrary determination is made."); *see also Gilman v. BHC Sec., Inc.*, 104 F.3d 1418 (2d Cir.1997) (treating a suit brought as a class action as such for purposes of determining jurisdiction, despite the district court's failure to rule on class certification).

F.2d 559, 563 (5th Cir.1993) (holding that claims by fishermen for personal injuries and economic losses arising from a chemical spill were not aggregable, since "one plaintiff's recovery is neither dependent upon, nor necessarily reduced by, another's"). Accordingly, plaintiffs' claims may not be aggregated to obtain the necessary jurisdictional amount.

A more complicated question arises when we consider whether, if at least one of the named plaintiffs meets the jurisdictional threshold of $50,000, the district court can exercise supplemental jurisdiction over the remaining members of the plaintiff class. In *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Supreme Court held that supplemental jurisdiction could not be exercised over the claims of class members that do not satisfy the amount in controversy. *See id.* at 300. In 1990, however, Congress enacted 28 U.S.C. § 1367. Briefly, § 1367(a) grants district courts that have original jurisdiction over an action the power to exercise supplemental jurisdiction over all claims that are part of the same case and controversy. Section 1367(b) creates certain exceptions to that rule in diversity actions, but class actions are not among the listed exceptions.[8]

Our court has not spoken as to the continuing viability of *Zahn* after the enactment of § 1367, and other courts of appeals have reached different conclusions on the issue. *Compare Free v. Abbott Labs. (In re Abbott Labs.)*, 51 F.3d 524, 527–29 (5th Cir.1995) (finding that § 1367 legislatively overruled *Zahn*, thereby permitting district courts to exercise supplemental jurisdiction over class members whose claims do not meet the jurisdictional amount), *aff'd by an equally divided court*, —— U.S. ——, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000), *with Leonhardt v. Western Sugar Co.*, 160 F.3d 631, 640–41 (10th Cir.1998) (holding that § 1367 did not overrule the *Zahn* requirement in class actions).[9] Indeed, the Supreme Court itself has to date been unable definitively to resolve the question, for, after granting certiorari in *Free*, it affirmed the judgment of the Fifth Circuit by an equally divided vote. *See Free*, 120 S.Ct. 1578.[10]

It would, however, be premature for us to address this vexing question of statutory interpretation. For, not only was it not briefed or argued by the parties, neither of whom recognized the potential jurisdictional impediment, but the facts that would

**8.** Section 1367 provides, in pertinent part, as follows:

(a) [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of

such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367.

**9.** The circuits have also disagreed over whether § 1367 allows supplemental jurisdiction over plaintiffs joined under Federal Rule of Civil Procedure 20, which, like Rule 23, is not among the listed exceptions in § 1367(b). *Compare Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 931 (7th Cir. 1996) (holding that § 1367 overrules the *Zahn* requirement for claims by Rule 20 plaintiffs), *with Meritcare Inc. v. Saint Paul Mercury Ins. Co.*, 166 F.3d 214, 222 (3d Cir.1999) (holding that § 1367 did not overrule the *Zahn* requirement for claims by Rule 20 plaintiffs).

**10.** Of course, such a disposition has no precedential effect. *See Neil v. Biggers*, 409 U.S. 188, 192, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

require the question to be addressed have not been established. Akzo has never shown that even one of the plaintiffs met the $50,000 jurisdictional requirement at the time the suit was brought, and, absent such a threshold showing, no issue of supplemental jurisdiction is currently presented.

Because, on this record, we are unable to determine whether any or all of the plaintiffs met the required $50,000 amount in controversy, we must remand to the district court to give Akzo an opportunity to make that showing. *See, e.g., Squibb,* 160 F.3d at 940; *United Food,* 30 F.3d at 306. A remand to the district court is the appropriate course of action because the issue of whether the statutory amount in controversy was satisfied has not yet been raised in, or considered by, the district court. *See id.* at 306 ("[H]ad the [plaintiff] challenged the amount in controversy ... in the district court ... the parties, under the direction of the district court, would have had an opportunity to supplement the record to allow for an informed decision on the issue. It is only fair, therefore, that the issue be remanded to the district court to allow the parties to submit evidence on the amount in controversy and to give defendants an opportunity to meet their burden as to this requirement of diversity jurisdiction as well.").

We note that in *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269 (2d Cir.1994), after finding that neither the plaintiff's complaint nor the defendant's notice of removal alleged facts adequate to establish the requisite amount in controversy, we declined to allow the defendant, on remand, to introduce further evidence supporting jurisdiction, and instead directed the district court to send the case back to state court. *See id.* at 273–74. In that case,

however, the defendant's notice of removal improperly asserted federal question jurisdiction as the basis for removal, and the alternative basis of diversity jurisdiction was not raised by the defendant until appeal. *See id.* at 273. Following the Supreme Court in *McNutt,* we held that, because the notice of removal failed even to allege diversity jurisdiction as a basis for removal, the defendant had "no standing" to seek removal. *See id.* at 274; *McNutt,* 298 U.S. at 189, 56 S.Ct. 780 ("[The defendant seeking removal] must allege in his pleading the facts necessary to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations."). Moreover, we found that it would be improper to allow the defendant to amend its notice of removal when the litigation was so far advanced. *See id.* This case stands on a different footing from *Lupo* for the simple reason that Akzo has asserted diversity jurisdiction from the start, and accordingly has "standing," as the *McNutt* Court put it, to seek removal. And because the district court has not yet had an opportunity to make the "inquiry into the existence of jurisdiction" contemplated by the *McNutt* Court once the defendant makes the necessary allegations, remanding to the district court for that purpose, as we did in *United Food* and *Squibb,* is appropriate. *See Squibb,* 160 F.3d at 940; *United Food,* 30 F.3d at 306.

If, on remand, Akzo can show to a reasonable probability that each of the plaintiffs' claims—including those of absent class members—met or exceeded $50,000 when the case was brought, then diversity jurisdiction was proper.[11] Conversely, if,

---

**11.** In this regard, we note that, while the record as to the amount of loss sustained by each plaintiff is sparse, what evidence there is suggests that Akzo may not be able to meet that burden. One of the arguments put forward by plaintiffs' counsel for certifying this suit as a class action was that the individual

losses sustained by the plaintiffs were likely to be *less* than $50,000. At oral argument before the district court, plaintiffs' counsel maintained that "for most of these people the cost of trying their cases would be more than their damages. It would not be economically feasible for them to go forward on a case by

on remand, Akzo can show that one or more, but not all, of the plaintiffs have claims that exceeded $50,000, then the district court should consider whether the exercise of supplemental jurisdiction over the remaining plaintiffs' claims would be proper, or whether, instead, the claims of these remaining plaintiffs should be dismissed.[12] Finally, if Akzo is unable to show to a reasonable probability that the claims of *any* of the plaintiffs met the statutory requirement, then the district court must send the lawsuit back to state court.

### III

Because subject-matter jurisdiction is not established, we cannot and do not reach the merits of the question of New York tort law presented to us on this appeal. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 101–02, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires."). Nevertheless, in the interest of judicial economy, and in view of the fact that jurisdiction may be found to exist, we take this opportunity to indicate why, even were jurisdiction established, that question might well not be ripe for decision by us.

 The district court held that New York nuisance law does not allow plaintiffs to recover for diminution in the value of their property caused by public fear of a dangerous event such as a mine collapse, unless they can show "that their property

has been physically damaged, or that their use and enjoyment of their property has been unreasonably interfered with, by the defendant's actions." *Mehlenbacher,* 71 F.Supp.2d at 188. Plaintiffs argue that under New York law physical damage to or invasion of their property is not required to maintain a nuisance action. And they contend that they therefore can recover for stigma damages alone. Their contention, however, misses the point: in order to make out a claim of nuisance under New York law, a party must show an interference with the use and enjoyment of its property. *See Copart Indus., Inc. v. Consolidated Edison Co.,* 41 N.Y.2d 564, 394 N.Y.S.2d 169, 362 N.E.2d 968, 971 (1977). The question before the district court, therefore, was whether diminution in the value of property, *without more,* can constitute an interference with use and enjoyment.

This latter is an issue on which the New York courts have not spoken. In support of their argument to the contrary, plaintiffs rely primarily on cases involving the measure of just compensation for a taking. *See, e.g., Criscuola v. Power Authority,* 81 N.Y.2d 649, 602 N.Y.S.2d 588, 621 N.E.2d 1195 (1993). But we question whether *Criscuola* and cases similar to it are directly relevant to plaintiffs' claims here. For, in *Criscuola,* the issue of liability was not before the court. Rather, the question was, once a taking had concededly occurred (that is, once liability had been established), what was the proper level of compensation. *See id.* at 1196. And diminution in market value is clearly the appropriate measurement of just compensa-

---

case basis, because they might claim ten or fifteen or twenty thousand dollars in subsidence damage per person, or maybe even a little more, maybe twenty-five or thirty thousand dollars." Tr. of Hearing on Class Certification, Aug. 21, 1998, at 8. Nevertheless, it is not impossible that, on remand, Akzo will be able to introduce evidence establishing that each plaintiff's demand exceeds $50,000, and we are bound to give Akzo the chance to do so.

12. The issue of whether, when a jurisdictional defect exists at the outset of an action but is subsequently cured (for example, by dismissal of dispensable parties), the relevant amount in controversy is that in effect at the outset, or that in effect at the time the jurisdictional defect is cured, is currently *sub judice* in this Court. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,* No. 97–9468(L) (2d Cir. argued Oct. 4, 1999).

tion in a takings context. *See id.* Citing *Criscuola* for the proposition that stigma damages are available in a tort action, therefore, begs the question, which is rather whether, absent some other interference with plaintiffs' ability to use and enjoy their property, liability in nuisance exists. And this question seems not to be answered by the New York cases. Moreover, other jurisdictions faced with the same question have reached different results. *Compare, e.g., Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 487 N.W.2d 715, 721 (1992), *with, e.g., Allen v. UniFirst Corp.*, 151 Vt. 229, 558 A.2d 961 (1988).

Under these circumstances, we might be inclined to certify the issue to the New York Court of Appeals. *Cf. Scribner v. Summers*, 138 F.3d 471, 473 (2d Cir.1998) (per curiam)(commenting that, "[d]ue to the uncertainty of New York law on whether stigma damage can be recovered following an environmental cleanup, we would be inclined to certify the question to the New York Court of Appeals should the question be presented on an appropriate record," but because the record was not adequately developed, remanding to the district court). In the instant case, however, certification would not be warranted. Akzo has made two other arguments on the basis of which it claims that plaintiffs cannot maintain a nuisance action: (1) since plaintiffs allege that the mine collapse affected all property owners within a thirteen-mile radius, their action is necessarily one for public, rather than private, nuisance; and (2) the mine collapse was a single, discrete event, while New York law requires that a nuisance derive from an ongoing condition. But, even assuming we had subject-matter jurisdiction, we could not deal with these two defenses at this juncture. For resolution of Akzo's public nuisance and ongoing condition arguments affects the claims of all the plaintiffs, including those as to whom the district court has rendered no final judgment, and who are, therefore, not before us. As a result, despite the uncertainty in New York law

as to the availability of stigma damages, that issue is not currently determinative of the action, and certification would therefore not be appropriate. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.17 ("Whenever it appears to ... any United States Court of Appeals ... that *determinative* questions of New York law are involved in a cause pending before it for which there is no controlling precedent of the Court of Appeals, such court may certify the dispositive questions of law to the Court of Appeals." (emphasis added)).

Because federal jurisdiction over this action is not yet established, we make these comments merely to indicate to the district court some of the problems that would remain, were it, on remand, to conclude that it had subject-matter jurisdiction. Accordingly, we intimate no view on the correct resolution of these issues, which are, in the first instance, for the district court to consider, should it find that it has jurisdiction.

\* \* \*

The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.