## MAXONS RESTORATIONS, INC., Plaintiffs,

v.

## Robert NEWMAN, Defendant.

### No. 03 Civ. 8881(CSH).

United States District Court, S.D. New York.

Nov. 18, 2003.

---

Law Offices of David M. Schreier, New York City, for plaintiff.

Timothy M. Singhel, Holland & Knight, L.L.P., New York City, for defendant.

## MEMORANDUM AND ORDER

HAIGHT, Senior District Judge.

By notice filed on November 10, 2003 pursuant to 28 U.S.C. § 1441, defendant removed this case from a New York state court, claiming diversity of citizenship under § 1332(a)(1) as the source of federal subject matter jurisdiction. At the first hearing before this Court on November 13, counsel for plaintiff made a speaking motion to remand the case to the state court for lack of the requisite jurisdictional amount. On November 21, the Court advised counsel by telephone that plaintiff's motion to remand had been denied, and that an opinion giving the Court's reasons would follow. This is that opinion.

## BACKGROUND

According to the papers submitted with defendant's notice of removal, plaintiff Maxons Restorations, Inc. ("Maxons"), a New York corporation, is in the business of restoring property damaged by fire, water, smoke, and other casualties. Defendant Robert Newman, a New Jersey resident, was an at will Maxons employee working under a written contract dated April 1, 2001. On September 17, 2003,

Maxons terminated Newman's employment.

The April 1, 2001 contract contained a restrictive covenant, which provided that for a period of 30 months after the term of Newman's employment by Maxons, Newman agreed not to engage directly or indirectly in any property damage restoration or other business competitive with Maxons in certain designated counties in New York and New Jersey. The contract also contained a broad form arbitration clause calling for arbitration before the American Arbitration Association of "[a]ny controversy or claim arising out of or relating to this Agreement ..."

Maxons alleges that shortly after it terminated Newman's employment, Newman violated this restrictive covenant by accepting employment with United Restoration Services, Inc. ("United"), a competitor of Maxons, located in one of the New York counties identified in the covenant. In these circumstances, Maxons filed with the American Arbitration Association and served upon Newman a demand for arbitration. The "relief sought" specified in that demand reads as follows:

> Based upon all the foregoing, Maxons seeks an award directing Mr. Newman to: (a) cease and desist from his employment with United Restorations in accordance with the terms and conditions of the signed written contract between the parties; and (b) pay Maxons the sum of $50,000.00 plus interest, costs, disbursements and attorney's fees (also pursuant to the signed written contract between the parties). Maxons also seeks an award denying any counterclaims which Mr. Newman may interpose.

Also on October 31, 2003, Maxons filed a petition in the Supreme Court, New York County, pursuant to Article 75 of the N.Y. CPLR, which provides that a party may, in aid of arbitration, make a request to the

state court for a preliminary injunction on the ground that the award that the petitioner might receive from the arbitrators would be rendered ineffectual without such provisional relief from the court.

Maxons's petition to the state court was made *ex parte*. On October 31, 2003, the state court (Lottie E. Wilkins, *Justice*), signed a temporary restraining order. Justice Wilkins struck from that order language by which Maxons sought to temporarily enjoin Newman from "engaging directly or indirectly in any business in the counties of New York, Westchester and Nassau in the State of New York and in the counties of Bergen and Passaic in the State of New Jersey involving property damage or which is competitive with any other business conducted by Maxons." Justice Wilkins's order did enjoin Newman from "divulging any Maxons' [sic] confidential or proprietary information which respondent [Newman] learned during his employment with Maxons, including the computer program for how they run their business models." The case was scheduled for a further hearing in the state court on November 12, 2003.

Newman responded to Maxons's state court petition by filing his notice removing the case to this Court.

## DISCUSSION

The federal removal statute, 28 U.S.C. §§ 1441 *et seq.*, provides for the removal by a defendant of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction ... to the district court of the United States for the district and division embracing the place where such action is pending."

In the case at bar, Newman relies upon diversity of citizenship as the source of this Court's original jurisdiction. The governing statute is 28 U.S.C. § 1332(a), which provides:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -

(1) citizens of different States ...

It is undisputed that Maxons and Newman are "citizens of different States." Thus the dispute about the propriety of Newman's removal focuses upon whether the requisite amount in controversy exceeds "the sum or value of $75,000 exclusive of interest and costs." Maxons contends that it does not, and moves for a remand of the case to the state court. Newman contends that the present record adequately demonstrates the existence of the jurisdictional amount or, in the alternative, prays for limited discovery in aid of jurisdiction.

Diversity cases considering the existence of the jurisdictional amount fall into two general categories. The plaintiff sues in a federal court, alleging diversity and the jurisdictional amount, and defendant disputes the amount; or plaintiff sues in a state court, defendant removes the case, alleging diversity and the jurisdictional amount, and plaintiff disputes the amount. The instant case falls within the latter category.

■ Courts' analyses of the "sum or value" of the "amount in controversy," 28 U.S.C. § 1332(a), differ somewhat, depending upon the circumstances of the case. When a plaintiff invokes diversity and sues in a federal court for money damages only, the court views with deference the amount claimed in the complaint as is mandated by the Supreme Court's rule articulated in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938): "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." "Legal certainty is analyzed

by what appears on the face of the complaint;" actual recovery of a lesser amount does not oust federal diversity jurisdiction. *Wolde–Meskel v. Vocational Instruction Project Community Services, Inc.,* 166 F.3d 59, 63 (1999). Moreover, the Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* A suit for money damages requires a relatively straightforward analysis of the dollar amount claimed in the complaint, viewed in the light of the circumstances of the case. For example, a tort victim who suffered a sprained ankle, since healed, would have a difficult time justifying an allegation of the jurisdictional amount; a victim with a spinal injury and permanent disability would not.

■ When a plaintiff seeks equitable relief but no damages, the evaluation of the amount in controversy becomes more complex. "Where the plaintiff seeks injunctive relief, the value of his claim is generally assessed with reference to the right he seeks to protect and measured by the extent of the impairment to be prevented by the injunction. In calculating that impairment, the court may look not only at past losses but also at potential harm." *A.F.A. Tours, Inc. v. Whitchurch,* 937 F.2d 82, 87–88 (2d Cir.1991) (citations omitted). *See also General Transportation Services, Inc. v. Kemper Insurance Co.,* No. 5:03–CV–620, 2003 WL 21703635 (N.D.N.Y. June 25, 2003), at *2 ("Even an action that seeks only equitable relief may be removed if the value of the right at issue, or the extent of the injury to be prevented, exceeds $75,000") (internal quotation marks and citation omitted).

■ When, as in the case at bar, the existence *vel non* of the jurisdictional amount arises in the context of a petition to compel arbitration, the Second Circuit has advised district courts "to look through to the possible award resulting from the desired arbitration, since the petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming the award. The amount in controversy in a petition to compel arbitration is determined by the underlying cause of action that would be arbitrated," which is to say, "the amount in controversy is the difference between winning and losing the underlying arbitration." *Doctor's Associates, Inc. v. Hamilton,* 150 F.3d 157, 160 (2d Cir.1998) (internal quotation marks, ellipses, and citations omitted).[1]

■ In *Mehlenbacher v. Akzo Nobel Salt, Inc.,* 216 F.3d 291 (2d Cir.2000), as in the case at bar, the defendant removed the case from the state court where the plaintiffs filed it. The Second Circuit said that a defendant "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount. To determine whether that burden has been met, we look first to the plaintiffs' complaint and then to [defendant's] petition for removal." *Id.* at 296 (internal quotation marks and citation omitted). The burden that the Second Circuit placed upon a removing defendant to show "a reasonable probability" that the jurisdictional amount has been met seems somewhat less deferential to the pleader than the *St. Paul* test, which sustains a plaintiff's diversity complaint unless it is shown to a "legal certainty" that the amount has not been met. In any event, I will hold Newman, the removing

1. In the case at bar, Maxons's state court petition was for an injunction in aid of arbitration, rather than a petition to compel arbitration, but there is no principled distinction between the two with respect to the analysis of the amount in controversy described in text.

defendant in the case at bar, to the burden of proof articulated by the Second Circuit in *Mehlenbacher.*

The case turns, then, upon whether Newman has shown a reasonable probability that an arbitration award in Maxons's favor would have a value in excess of $75,000, as measured by the criteria derived from the cited Second Circuit cases.

Maxons asserts three claims in the arbitration: money damages in the amount of $50,000; equitable relief enforcing the restrictive covenant in its employment contract with Newman; and attorney's fees. That third claim is based upon the provision in ¶ 8(B) of the contract that "[i]n any such arbitration the arbitrators shall include, in their discretion, all or any portion of the prevailing party's fees and disbursements as a responsible cost against the losing party."

■ I begin the analysis by excluding from calculation of the jurisdictional amount the attorney's fees which, under the employment contract, the arbitrators could, but are not required, to award Maxons should it prevail. "The Second Circuit has held that attorney's fees may be used to satisfy the amount in controversy only where they are recoverable as of right pursuant to statute or contract." *In re Ciprofloxacin Hydrochloride Antitrust Litigation,* 166 F.Supp.2d 740, 755 (E.D.N.Y.2001) (citing *Givens v. W.T. Grant Co.,* 457 F.2d 612, 614 (2d Cir.1972), *vacated on other grounds,* 409 U.S. 56, 93 S.Ct. 451, 34 L.Ed.2d 266 (1972)). In *Ciprofloxacin* the governing statute provided that "attorney's fees are awarded to a successful litigant only at the court's discretion." *Id.* at 756. In that circumstance, Judge Trager went on to say:

> Because plaintiffs … would not necessarily be awarded attorney's fees as of right even if successful, the rule set forth in *Givens* disallows augmenting the amount in controversy for the pur-

pose of determining whether there is diversity jurisdiction. Applying this rule, other courts within this Circuit have concluded that, in instances where an award of attorney's fees is not mandated by statute or contract, the fee award may not be considered in determining whether a plaintiff's claim exceeds the jurisdictional minimum.

*Id.* (citing cases). I follow that rule in the instant case, where the awarding of attorney's fees to the prevailing party, in whole or in part, rests in the arbitrators' discretion.

Newman contends in his notice of removal that calculation of the jurisdictional amount should include expenses and losses he would suffer if Maxons obtains equitable relief from the arbitrators. Specifically, Newman points to "the real possibility that [he] might have to move his family if the requested relief was granted, with corresponding job loss to his wife, and the economic and real personal cost of uprooting his three children, selling his home, and buying a new one outside the Tri-State area," "Notice of Removal" at ¶ 5; Newman also refers to counterclaims in arbitration against Maxons "for several thousand dollars" in "unpaid wages and commissions," *id.*

■ The law of this Circuit precludes me from considering most of these factors. While it is generally said that where injunctive relief is sought the amount in controversy is measured by the value of the right at issue or the extent of the injury to be prevented, in the Second Circuit "it remains the general rule that the amount in controversy is measured from the plaintiff's viewpoint." *Kings Choice Neckwear, Inc. v. DHL Airways, Inc.,* No. 02 Civ. 9580, 2003 WL 22283814, 2003 U.S. Dist. LEXIS 17507 (S.D.N.Y. Oct. 2, 2003) (citing *Kheel v. Port of New York Authority,* 457 F.2d 46, 49 (2d Cir.1972)). While

the Second Circuit apparently has not squarely addressed whether the plaintiff's viewpoint rule applies to removal jurisdiction, several district courts have found that it does in the context of class actions seeking injunctive relief. *See Colon v. Rent–A–Center, Inc.,* 13 F.Supp.2d 553, 558 (S.D.N.Y.1998); *Katz v. Warner–Lambert Co.,* 9 F.Supp.2d 363 (S.D.N.Y.1998); *Bernard v. Gerber Food Products Co.,* 938 F.Supp. 218 (S.D.N.Y.1996). To be sure, the case at bar is not a class action, but neither was *Kheel,* the source of the Second Circuit rule; the court of appeals there stated:

> Generally, for this reason, the amount in controversy is calculated from the plaintiff's standpoint: "the value of the suit's intended benefit" or the value of the right being affected or the injury being averted constitutes the amount in controversy when damages are not requested.

457 F.2d at 49 (citation omitted). *Kheel* was not a removal case, but the Second Circuit's rule is stated in general terms and subsequent district court cases have almost uniformly adhered to it in a variety of circumstances. *But see Mortgageit, Inc. v. Wallberg,* No. 02 Civ. 5911, 2002 WL 31324135 (S.D.N.Y. Oct.16, 2002) (valuing prospective injunctive relief from the defendant's viewpoint in a non-class action). I think the better course is to follow the Second Circuit's generally expressed rule, and refuse to include in the jurisdictional amount calculus Newman's feared consequential expenses and losses if the arbitrators grant Maxons injunctive relief.[2]

■ This brings me to the two claims Maxons asserts in arbitration that must unquestionably be valued for jurisdictional amount purposes. The first claim is for money damages in the amount of $50,000. The second claim is for an injunction enforcing the restrictive covenant in the employment contract. If the value of that equitable relief is at least $25,000.01, the claims from plaintiff's standpoint exceed $75,000, and the jurisdictional amount has been demonstrated.

Analysis of the value of Maxons's claim for an injunction requires consideration of "the extent of the injury to be prevented" by enforcing the restrictive covenant in the employment contract. *General Transportation Services,* 2003 WL 21703635, at *2. The injunction, if granted by the arbitrators, would restrict Newman's business activities for a period of 30 months after September 17, 2003; but that future effect does not preclude a present valuation of Maxons's equitable claim. As noted, the Second Circuit has held that, in valuing a claim for injunctive relief for jurisdictional amount purposes, "the court may look not only at past losses but also at potential harm." *A.F.A. Tours,* 937 F.2d at 88.

The "potential harm" that Maxons seeks to prevent by restricting Newman's business activities is perfectly obvious: Maxons does not want to lose business to United, a direct competitor and Newman's present employer. During the hearing, Maxons's counsel seemed to suggest that the company's claim against Newman was motivated solely by a desire, as a sort of

---

**2.** *Quaere* whether Newman's asserted counterclaims for "several thousand dollars," arising directly out of the contract of employment, should not be included in the calculus. *See Doctor's Associates, Inc.,* 150 F.3d 157, 161, where the defendant's state court action arising out of the same transaction seeking $1 million in damages was factored into the Second Circuit's holding that plaintiff's petition to compel arbitration satisfied the jurisdictional amount. ("Should the parties proceed to arbitration and [plaintiff] DAI prevail, DAI would have defeated a claim in excess of $1 million in damages," thereby justifying the district court's conclusion that "the amount-in-controversy requirement had been met."). For the reasons stated in text, I need not further pursue this question.

private attorney general, to uphold the sanctity of contracts for the greater good of the community. I think it plain that Maxons is acting to protect its own economic interests. Moreover, Maxons's concern is understandable. Newman began his employment with Maxons in January 2000.[3] Between that date and his termination on September 17, 2003, Newman undoubtedly became familiar with Maxons's present clients, future prospects, and business strategies in the conduct of post-casualty property restoration. Newman is now working for United, a direct competitor, active in geographical areas where Maxons also does business. Common sense mandates the conclusion that the potential harm to Maxons inherent in Newman's employment by United for the next two years is at least $25,000.01. Indeed, it is far more than that. The sort of "property damage restoration" engaged in by Maxons is expensive.[4] A single building casualty of any dimension would run up a restoration cost of at least $25,000.01 in the twinkling of an eye (with the bill presumably being presented to the insurance company issuing the homeowner's policy). So the potential diversion by Newman of only one restoration project from Maxons to United during the next two years establishes the jurisdictional

amount; but the potential loss to Maxons is clearly greater than that.

For the foregoing reasons, I hold that defendant Newman has sustained his burden of showing a reasonable probability that the value of an arbitration award in Maxons's favor on all its claims would exceed $75,000. Therefore the jurisdictional amount has been demonstrated in this case. It follows that Newman properly removed the case to this Court. Maxons's motion to remand the case to the state court is denied.[5]

It is SO ORDERED.

---

3. Newman began his employment at Maxons pursuant to a contract dated January 3, 2000. The present rights and obligations of the parties are governed by the April 1, 2001 contract, which replaced the earlier one.

4. The April 1, 2001 contract between Maxons and Newman, at ¶ 4(D), lists without limitation some of Maxons's commercial activities. They include "emergency cleaning," "soot & odor removal," "water extraction," "drying/dehumidification," "HVAC duct cleaning," "repair of fire, smoke and/or water damage to building interiors and/or exteriors," and "dry cleaning/laundering."

5. The careful reader will understand that the Court's analysis in text implicates no view

with respect to the merits of the parties' claims against each other, which will be resolved by the arbitrators.

While the case will remain in this Court, I make no further scheduling order at this time. Pursuant to 28 U.S.C. § 1450, the state court's restraining order remains in full force and effect until dissolved or modified by this Court; no such application is presently before me. Under Second Circuit case law, that restraining order is viewed as "in substance a final injunction, albeit one of limited duration," i.e., in effect until the arbitrators render their award. *Guinness–Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 471 (2d Cir.1980).