442 F.3d 767
 CORRESPONDENT SERVICES CORPORATION, Plaintiff-Counter-Defendant,
v.
FIRST EQUITIES CORPORATION OF FLORIDA, Defendant-Cross-Defendant,
J.V.W. Investment Ltd., Defendant-Cross-Claimant-Counter-Claimant-Cross-Defendant-Appellant,
J.V. Waggoner, Defendant-Cross-Claimant-Cross-Defendant-Appellant,
Donal Kelleher, Defendant-Cross-Defendant,
Suisse Security Bank and Trust, Ltd., Cross-Defendant-Appellee.
 No. 04-5561-CV(L).
 No. 05-0643-CV(CON).
 No. 05-0935-CV(CON).
 United States Court of Appeals, Second Circuit.
 Argued: October 18, 2005.
 Decided: March 10, 2006.
 
 Kenneth A. Caruso, New York, New York (Chadbourne & Parke LLP, New York, New York), for Defendant-Appellant.
 Andrew E. Tomback, Charles W. Westland, New York, New York (Milbank, Tweed, Hadley & McCloy LLP, New York, New York), Jonathan W. Wolfe, Livingston, New Jersey (Skoloff & Wolfe, P.C., Livingston, New Jersey), for Cross-Defendant-Appellee.
 Before: Hon. AMALYA L. KEARSE Hon. ROGER J. MINER Hon. PETER W. HALL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants J. Virgil Waggoner and J.V.W. Investment Ltd. (the "Waggoner Parties"), two of several defendants below, appeal from the dismissal of a declaratory judgment claim brought by plaintiff Correspondent Services Corporation ("CSC"). Having found no basis for the exercise of its subject matter jurisdiction over the declaratory judgment claim, the district court declined to exercise supplemental jurisdiction over appellants' state law cross-claims against appellee Suisse Security Bank & Trust, Ltd. ("SSBT") and therefore vacated its previously-entered attachment of SSBT's assets. We affirm the dismissal for lack of subject matter jurisdiction.
 
 Background
 
 2
 As we noted in our July 16, 2003 opinion in this case, "[w]hile the facts of this case illustrate one of the myriad ways in which complicated investment transactions can turn sour, the question that confronts us is much less complicated: whether the district court had jurisdiction over this action. . . ." Correspondent Servs. Corp. v. First Equities Corp. of Florida, 338 F.3d 119, 121 (2d Cir.2003). There, we affirmed the district court's dismissal of CSC's interpleader action but remanded for the district court to consider whether it could exercise subject matter jurisdiction over CSC's declaratory judgment claim in its amended complaint.
 
 
 3
 We recounted the specifics of the underlying investment scheme in our 2003 opinion and here provide only those additional facts relevant to the disposition of the present appeal. Those facts are contained in the following paragraphs of CSC's Amended Complaint:
 
 
 4
 ¶ 20. In response to CSC's announced intention to deliver the CD to FECF, Kelleher wrote CSC on July 21, 1999 demanding that the CD not be transferred and that CSC remain as custodian of either the CD itself "or it's [sic] cash equivalent of USD 10.6 million." Indeed, Kelleher even referred to the CD as "the valuable CD worth 10,600,000."
 
 
 5
 ¶ 22. Kelleher wrote CSC yet again on July 23, 1999, once more referring to the CD as "our asset of USD 10,600,000" and threatening CSC with litigation by suggesting that CSC must have notified SIPC and its insurer, the Travelers Casualty and Surety Company of America, "of the probability of a claim if you transfer our assets as you note . . . ."
 
 
 6
 ¶ 23. CSC was confronted with repeated claims by Kelleher that the CD had a value of $10,600,000, that CSC was obligated to retain either the CD or the cash equivalent in the amount of $10,600,000, and that CSC risked being subject to a claim by Kelleher in that amount if it transferred the CD to anyone other than him or those designated by him.
 
 
 7
 ¶ 37. There is an actual controversy pending as to the ownership of the CD which CSC has deposited into Court. Among other things, CSC has been threatened with claims by Kelleher in excess of ten million dollars ($10,000,000) in the event it transferred the CD to anyone but Kelleher or his designees.
 
 
 8
 ¶ 38. CSC seeks a declaration pursuant to 28 U.S.C. § 2201 that CSC has no liability to Kelleher and that CSC, having acted in accordance with the terms of the CD and/or having deposited the CD with the Clerk of the Court, has no further liability to any party in connection with the CD or its role as custodian of the CD, that it is discharged from liability, and awarding CSC its costs and attorneys' fees.
 
 Standard of Review
 
 9
 On appeal from a dismissal for lack of subject matter jurisdiction, we review the district court's legal conclusions de novo, J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 112 (2d Cir.2004), and its factual findings for clear error. Luckett v. Bure, 290 F.3d 493, 496 (2d Cir.2002).
 
 Discussion
 
 10
 We are asked in this appeal to consider whether CSC's declaratory judgment claim failed to satisfy the "amount-in-controversy" requirement such that the district court properly dismissed the claim for lack of subject matter jurisdiction under 28 U.S.C. § 1332. The parties do not dispute that when CSC brought this action, the CD had no value.
 
 
 11
 As the district court correctly noted, the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts. See 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (emphasis added)). Rather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment. See Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 752 (2d Cir.1996). The asserted basis for jurisdiction in this case is 28 U.S.C. § 1332, requiring that the parties be diverse and that the amount in controversy exceed $75,000. Diversity of citizenship is not disputed here; the jurisdictional dispute relates only to the amount in controversy.
 
 
 12
 "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Adver. Com'n, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). We have observed that "the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." Kheel v. Port of New York Auth., 457 F.2d 46, 49 (2d Cir.1972) (internal quotations omitted).
 
 
 13
 Based on its review of the relevant allegations in the complaint, the district court concluded that the object of the litigation in this case was the worthless CD and therefore determined that the § 1332 jurisdictional amount had not been satisfied. In support of its decision, the district court cited paragraph 37 of the complaint, which specified that "[t]here is an actual controversy pending as to the ownership of the CD which CSC has deposited into Court." The district court therefore held:
 
 
 14
 Because the CD has been identified by the plaintiff in this action as the object of the "actual controversy," its value provides the appropriate basis for the measure of the amount in controversy. . . . It follows that, since the CD "had no value when CSC brought suit," the amount in controversy with regard to Count Three falls short of the requisite $75,000.
 
 
 15
 In reaching this conclusion, the district court considered the Waggoner Parties' argument that CSC brought the declaratory judgment claim in order to avoid liability to Kelleher in the approximate amount of $10 million and that this is the appropriate measure of the jurisdictional amount under § 1332. The district court emphasized, however, that "[w]hile [the Waggoner Parties are] correct that the amended complaint reflects a concern with potential liability, the allegations contained in [the declaratory judgment count] amply demonstrate that this attention to liability is derived from the `controversy pending as to the ownership of the CD.'" Focusing its § 1332 analysis on the CD as the object of the litigation, the district court declined to exercise jurisdiction. We agree with and adopt the above reasoning of the district court, and therefore affirm its holding that diversity jurisdiction was lacking over CSC's declaratory judgment claim.
 
 Conclusion
 
 16
 For the foregoing reasons, we AFFIRM the decision of the district court.