469 F.3d 271
 William J. DiTOLLA, on behalf of himself and all those similarly situated, Plaintiff-Respondent,
v.
DORAL DENTAL IPA OF NEW YORK, LLC, Doral Dental USA, LLC, and DentaQuest Ventures, LLC, Defendants-Petitioners.
Docket No. 06-2324-cv.
 United States Court of Appeals, Second Circuit.
 Argued: October 11, 2006.
 Decided: November 17, 2006.
 
 Peter J. Stone, Foley & Lardner LLP (Brian E. Cothroll, Robert A. Scher, Jeremy L. Wallison, on the brief), Milwaukee, Wisconsin, New York, NY, for Defendants-Appellants Doral Dental IPA of New York, LLC, Doral Dental USA, LLC, DentaQuest Ventures, LLC.
 Jerome M. Marcus, Berger & Montague, PC (Jonathan Auerbach, on the brief) Philadelphia, PA, (Thomas E.L. Dewey, Elaine Block, Dewey Pegno & Kramarsky LLP, on the brief), New York, NY, for Plaintiff-Appellee William DiTolla.
 Before WESLEY, HALL, Circuit Judges, JONES, District Judge*.
 HALL, Circuit Judge.
 
 
 1
 The appeal in this class action asks us to determine the amount in controversy in an action for an accounting where there is no accompanying demand for damages or restitution. Appellants, collectively a third-party administrator of a New York Dental Panel Reimbursement Pool ("the Pool") funded by Medicaid and Medicare, argue that, because DiTolla seeks an accounting of all amounts by which the Pool has been funded and reduced (an estimated $40 million), he has put the entire $40 million "in controversy."[1] As such, they contend, the amount in controversy is well over the $5 million jurisdictional requirement imposed by the Class Action Fairness Act of 2005, Pub.L. 109-2, 119 Stat. 4 (2005) ("CAFA"). For the reasons that follow, we hold that the Appellants have not met their burden of demonstrating that the amount-in-controversy requirement has been met. We affirm the judgment of the district court and deny as moot the Appellants' motion seeking a stay.
 
 
 2
 Preliminarily, we also hold that, under the provision of CAFA requiring courts of appeals to "complete all action" on appeals "not later than 60 days after the date on which such appeal was filed . . .," 28 U.S.C. § 1453(c)(2), we are not required to deny the appeal despite the fact that it was docketed more than 60 days prior to the time that a panel of this Court granted the petition to allow it.
 
 
 BACKGROUND
 
 
 3
 Doral Dental IPA of New York, LLC, Doral Dental USA LLC, and DentaQuest Ventures, LLC (collectively "Doral Dental") compensate, through this Pool and others, dentists operating in various states who have agreed to treat patients eligible under Medicaid or Medicare. The pools consist of state and federal funds from which participating dentists are paid monthly on a pro rata basis. According to their provider agreements, Doral Dental may subtract associated consulting or brokerage fees from the pools prior to distributing the remaining monies to the dentists.
 
 
 4
 In February 2006, Plaintiff-Appellee Dr. William J. DiTolla, a New York-licensed dentist, filed on behalf of himself and all other dentists receiving funds from the New York Pool a class action complaint in the Nassau County Supreme Court. Asserting that Doral Dental owed a fiduciary duty to DiTolla and the purported class, the complaint sought an accounting of "all amounts by which the Pool was funded and reduced throughout the period in which Defendants have been under contract . . . as well as the amounts paid out to all Dentists in the class, and the methods by which such payments to Dentists were calculated." DiTolla noted that the Doral Dental entities were the subjects of ongoing federal grand jury investigations in several states for allegedly deducting improper or sham consulting fees from the Pools, and that Doral Dental had purportedly settled for $5.25 million a class action relating to improper deductions from a Pennsylvania Pool.
 
 
 5
 Doral Dental removed the action to the United States District Court for the Eastern District of New York pursuant to CAFA, which has amended diversity jurisdiction requirements by vesting jurisdiction in the federal courts over class actions where, inter alia, the amount in controversy exceeds $5 million. See 28 U.S.C. § 1332(d)(2); Gottlieb v. Carnival Corp., 436 F.3d 335, 341 n. 7 (2d Cir.2006).
 
 
 6
 Doral Dental's notice of removal asserted that the amount in controversy exceeded the sum of $5 million, exclusive of interest and costs. Specifically, Doral Dental averred that the amounts by which the Pool was funded and reduced during the class period exceeded $40 million. After the action was removed, DiTolla moved to remand the action to the state court, contending that because the complaint sought only an accounting—a remedy for which no value could be assigned—the amount in controversy requirement had not been met.
 
 
 7
 The District Court granted DiTolla's motion and remanded the case to the state court. The District Court determined as a preliminary matter that CAFA had not altered the traditional rule that the party asserting federal jurisdiction bears the burden of proving the case is properly in federal court. Next, the District Court rejected the argument that the res of the Pool was the measure by which to determine whether the statute's jurisdictional minimum was satisfied. Citing Macken v. Jensen, 333 F.3d 797 (7th Cir.2003), the District Court held that, because DiTolla sought only information, and the value of that information could not be estimated, Doral Dental had failed to meet their burden of establishing federal jurisdiction.
 
 
 8
 In accordance with CAFA's provision enabling courts of appeals to "accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed," 28 U.S.C. § 1453(c)(1), Doral Dental petitioned for this Court's permission to appeal the District Court's decision. After this Court granted Doral Dental's petition, and before briefing, Doral Dental moved for a stay of the District Court's remand order or, in the alternative, to enjoin the state court from proceeding with the remanded action. Pursuant to Fed. R.App. P. 8(a)(2)(D), a single judge of this Court granted Doral Dental a temporary stay subject to this panel's review.
 
 
 DISCUSSION
 
 I. CAFA's 60-day Deadline
 
 9
 Before addressing the jurisdictional question of the amount in controversy, we nostra sponte address another issue presented by this appeal—whether, as of the date that a panel of this Court granted Doral Dental permission to appeal and before the parties stipulated to an enlargement of time in which to complete all action on this appeal, the Court should have denied the appeal. The issue arises from CAFA's requirement that courts of appeals "complete all action on such appeal [from a district court's grant or denial of a motion to remand], including rendering judgment, not later than 60 days after the date on which such appeal was filed, unless an extension is granted under [28 U.S.C. § 1453(c)](3)." 28 U.S.C. § 1453(c)(2) (emphasis added). If a court does not issue a final judgment within that 60-day time period, the statute provides that the appeal "shall be denied." 28 U.S.C. § 1453(c)(4). Here, Doral Dental filed a petition for permission to appeal on May 19, 2006, but the petition itself was not granted until sixty-six days later on July 24, 2006. Doral Dental's brief was filed on August 17, 2006, and, on September 21, 2006, the parties stipulated pursuant to section 1453(c)(3)(A) to a 60-day extension of our deadline to render judgment.
 
 
 10
 The question to be answered is: when was the appeal "filed" for purposes of commencing the original CAFA 60-day period? If we were to interpret the "filing" of the appeal to be the May 19 filing of the petition, the present appeal would have been effectively "denied" by operation of section 1453(c)(4) before we even granted Doral Dental permission to appeal. That is, as of July 24, 2006, the only entry this Court would have had authority to make was a denial of the appeal because by that date 60 days had already passed since Doral Dental's initial filing. We reject this interpretation, however, and hold that the "filing" of the appeal for CAFA purposes occurs on the date in which this Court issues an order granting permission to appeal. Thus, we presume that Congress intended the "filing" of the appeal to mean the commencement of the appeal, not merely the docketing of the appeal.
 
 
 11
 This holding is in line with our administrative handling of this case. Although the May 19 filing of the petition for permission to appeal docketed the present appeal, it was the July 24 order granting that petition that triggered the Clerk's Office to commence its routines for preparing the appeal for briefing and argument. Our holding is also consistent with the time-calculation provision of Fed. R.App. P. 5, governing appeals by permission, which we conclude applies to CAFA appeals. See Fed. R.App. P. 5(d)(2) ("The date when the order granting permission to appeal is entered serves as the date of the notice of appeal for calculating time under these rules.").
 
 
 12
 Accordingly, CAFA's 60-day clock for rendering judgment starts running on the day that the Court's order granting permission to appeal is filed. In so holding, we join several of our sister circuits. See Hart v. FedEx Ground Package System Inc., 457 F.3d 675, 678 (7th Cir.2006); Evans v. Walter Industries, Inc., 449 F.3d 1159, 1162-63 (11th Cir.2006); Patterson v. Dean Morris, L.L.P., 444 F.3d 365 (5th Cir.2006); Bush v. Cheaptickets, Inc., 425 F.3d 683, 685-86 (9th Cir.2005). We were thus not required to deny the appeal and may proceed to address its relevant issues within the additional time stipulated by the parties.
 
 II. Burden of Proof
 
 13
 It is well-settled that, prior to CAFA's enactment, "[t]he party asserting federal jurisdiction [bore] the burden of proving that the case [was] properly in federal court." Gilman v. BHC Sec., 104 F.3d 1418, 1421 (2d Cir.1997) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). It is an issue of first impression in this Court whether CAFA has changed this traditional rule. Substantially for the reasons articulated by the District Court, we join three of our sister circuits and hold that it has not. See Miedema v. Maytag Corp., 450 F.3d 1322, 1328-29 (11th Cir.2006); Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 685 (9th Cir.2006); Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir.2005).
 
 
 14
 We reject Doral Dental's argument that it would be "unsound" to hold that Congress intended to adopt the traditional rule in the context of CAFA actions. On the contrary, it would be thoroughly unsound for this Court to reject a longstanding rule absent an explicit directive from Congress. See id. We presume that Congress, when it enacted CAFA, knew where the burden of proof had traditionally been placed. By its silence, we conclude that Congress chose not to alter that rule. See Cannon v. University of Chicago, 441 U.S. 677, 699, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) ("[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with . . . precedents [interpreting a private right of action in various statutes] and that it expected its enactment [of Title IX] to be interpreted in conformity with them.").
 
 III. The Amount in Controversy
 
 15
 We review de novo a district court's subject matter jurisdiction determination. See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir.1996).
 
 
 16
 Under New York law, an accounting is a distinct cause of action rooted in equity. See Fur & Wool Trading Co. v. George I. Fox, 245 N.Y. 215, 156 N.E. 670 (1927); Marcus v. Fabrikant, 81 A.D.2d 527, 438 N.Y.S.2d 93 (1st Dep't 1981); 300 Broadway Realty Corp. v. Kommit, 37 Misc.2d 325, 235 N.Y.S.2d 205 (1962). Such action seeks "an adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due." 1 AM. JUR. 2D Accounts and Accounting § 52 (2006). Although a request for an accounting typically accompanies a demand for restitution or other monetary relief, a plaintiff seeking an accounting "need not identify a particular asset or fund of money in the defendant's possession to which the plaintiff is entitled." 1A C.J.S. Accounting § 6 (2006). Nor need a plaintiff in a fiduciary relationship with the defendant allege any wrongdoing. Morgulas v. J. Yudell Realty, Inc., 161 A.D.2d 211, 213-14, 554 N.Y.S.2d 597, 600 (1st Dep't 1990).
 
 
 17
 Calculating the amount in controversy in an action for an accounting is not a straightforward task. As the remedy sought is equitable, and not legal, a monetary value cannot be easily assigned. The Supreme Court has held that, in actions for declaratory or injunctive relief, which, like an accounting, are equitable in nature, the amount in controversy is measured by the value of the object of the litigation. See Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).
 
 
 18
 Turning first to DiTolla's complaint, nowhere do we find that he has specified an amount alleged to be in controversy. In the first paragraph, moreover, DiTolla states in pertinent part: "This case is brought to compel disclosure of whether a scheme whereby a fund of millions of dollars . . . was fraudulently bilked by Defendants in New York as it may have been in other states by the same actors." Complaint at ¶ 1 (emphasis added). He goes on to reassert the contingent nature of his quest: "Plaintiff brings this action for an accounting to determine whether Doral made improper deductions from the Pool in New York, to improperly compensate persons as it had allegedly done in Tennessee and Pennsylvania." Id. at ¶ 22 (emphasis added).
 
 
 19
 Doral Dental's assertions in support of their efforts to remove this case shed little additional light on the amount in controversy. In fact, they seem to argue simultaneously that the object of litigation is both "the amounts by which the Pools at issue were funded and reduced, as well as the amounts paid to all dentists in the purported class," and also the entire value of the New York Pool itself. These figures are presumably not interchangeable, for while $40 million may have gone into and out of the Pool (or "Pools") during the contract period, the current balance of the New York Pool is likely much less. Indeed, nowhere do they reveal the present balance of the New York Pool.[2] Moreover, it appears from the fact that Doral Dental used the plural "Pools" in their notice of removal that the $40 million figure might take into account the money going into and out of pools in other states, and those funds are clearly not included in DiTolla's demand for an accounting.
 
 
 20
 Although it is unclear exactly what funds Doral Dental identified as comprising the res at issue, we proceed on the District Court's assumption that the asserted res is the New York Pool, and we will assume that the fund meets the jurisdictional requirements of CAFA.[3] That amount, however, is not "in controversy" in the present litigation. Indeed, DiTolla's complaint does not even purport to suggest the value of, much less lay claim to, the Pool. It seeks only an accounting, the results of which are presently unknown. For that reason, no one can say how much money may be ultimately claimed by DiTolla. See Kheel v. Port of New York Authority, 457 F.2d 46, 49 (2d Cir.1972) ("Generally . . . the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." (citation and internal quotation marks omitted)).
 
 
 21
 In support of their argument that we should consider the value of the Pool as the amount in controversy, Doral Dental's briefs erroneously rely on our decision in Correspondent Services Corp. v. First Equities Corp., 442 F.3d 767 (2d Cir.2006) ("Correspondent II"). In that case, we affirmed a district court judgment dismissing for subject matter jurisdiction a declaratory judgment action concerning the ownership of a worthless certificate of deposit. See id. We agreed with the district court that, because the plaintiff had identified the certificate of deposit as the object of the controversy, its value was the appropriate measure of the amount in controversy. See id. at 769. In Correspondent, the plaintiff asserted outright ownership of the certificate of deposit. Here, DiTolla asserts only a beneficial interest in the Pool. By doing so he does not place the entirety of the Pool "in controversy," because he makes no claim that he owns it, and at most he suggests a claim to some yet undefined portion, the amount of which is contingent on the outcome of the accounting.[4]
 
 
 22
 Our analysis is compatible with that of the Seventh Circuit in Macken, 333 F.3d 797, although we note that the two cases are not identical. The plaintiff seeking trust documents in Macken "d[id] not contend that the trust ha[d] failed to honor any financial obligations to [the beneficiaries]," Macken, 333 F.3d at 799. The Seventh Circuit considered what the value was to the plaintiff of obtaining the trust instrument and amendments—what the value of the "secret" was. Id. at 800. The court noted that only a "grave error" by the trustee in determining entitlements could cost the beneficiaries $75,000, the requisite amount in controversy. The court also pointed out that the plaintiff had conceded that "she ha[d] no reason to suspect that the trustee ha[d] made . . . any error," id. Accordingly, the Seventh Circuit determined that, at best, the value to the beneficiaries was speculative and, therefore, that "litigation [had to] commence in state court." Id.
 
 
 23
 Here, DiTolla states in his complaint that he suspects, based on lawsuits and criminal investigations in other states, Doral Dental "fraudulently bilked" the Pool. DiTolla acknowledges in his brief that he commenced the accounting action "after he learned [some] alarming facts about [Doral Dental's] operation of a pool in Pennsylvania identical to the one from which he was paid." From this we may infer that if the accounting were to reveal such potential fraud, he and the putative class would stand to gain court-ordered restitution or a settlement. We cannot say beyond mere speculation, however, whether those damages, if they are awarded, would be more than $5 million. Doral Dental has thus failed to demonstrate that the claim here satisfies CAFA's jurisdictional amount in controversy.
 
 
 CONCLUSION
 
 
 24
 The judgment of the District Court is AFFIRMED, and the motion for a stay is DENIED as moot.
 
 
 
 Notes:
 
 
 *
 The Honorable Barbara S. Jones, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 As discussed below, it is unclear which funds Appellants calculate to total $40 million
 
 
 [2]
 Citing to the notice of removal, Doral Dental's reply brief asserts that it is "undisputed" that the value of the Pool is approximately $40 million. The notice of removal, however, does not state the value of the New York Pool, but rather approximates that $40 million has gone into and out of the "Pools."
 
 
 [3]
 Our holding would apply equally if we assumed that the asserted res was the amount of funds going into and out of the Pool or that the asserted res was the amount going into and out of the pools in New York and other states
 
 
 [4]
 Reaching back into the first half of the previous century, Doral Dental's briefs cite for support a Fifth Circuit case from 1942 and a Western District of Wisconsin case from 1908. These cases do not help their position. The value of the objects of litigation in bothGarrett v. First National Bank, 153 F.2d 289 (5th Cir.1946), and Rogers v. Lawton, 162 F. 203 (C.C.W.D.Wis.1908), could be estimated: the plaintiffs in Garrett, heirs to a trust, contested a defendant bank's collection of $50,000 in insurance proceeds in breach of the trust; and the complainant in Rogers sought an accounting of a $4,000 farm, in which she had an ownership interest. See Garrett, 153 F.2d at 291; Rogers, 162 F. at 205. Here, as discussed, DiTolla does not estimate the amount of funds about which there may be a controversy.